# E. W. BLISS COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 240.   Argued March 12, 15, 1920.—Decided May 17, 1920.

Petitioner averred that it granted the Government's request for permission to purchase from another certain torpedoes containing a device in which the petitioner claimed patent rights, upon a royalty the amount of which was "to be later settled," and that the Government purchased; but it also alleged that negotiations to settle the amount to be paid failed and that petitioner never consented to the use of the patented invention without payment of an amount of royalty which the Government refused to pay.   *Held,* that no express or implied contract to pay any royalty, cognizable by the Court of Claims under Jud. Code, § 145, could be derived from the facts stated. P. 189.

To maintain an infringement suit against the United States under the Act of June 25, 1910, the claimant must have at least such an interest in the patent as independently of that act would support a suit against a defendant other than the United States. P. 191.

A grant by a prospective patentee of the "sole and exclusive license" to use the invention for the full term of patents to be procured, on designated articles, only when sold to the United States, the grantee undertaking to pay a royalty on each such article fitted with the invention and the grantor at its own cost to procure patent and to defend "the license to use . . . hereby granted" against infringers, is a mere license and will not sustain a suit for infringement. P. 192.

53 Ct. Clms. 47, affirmed.

THE case is stated in the opinion.

Mr. *Arthur C. Fraser,* with whom *Mr. Frank H. Platt* was on the brief, for appellant.

Mr. *Assistant Attorney General Davis,* and *Mr. Daniel L. Morris,* Special Assistant to the Attorney General, with whom *Mr. Edward G. Curtis,* Special Assistant to the Attorney General, was on the brief, for the United States.

Mr. Justice Clarke delivered the opinion of the court.

In this suit compensation is sought from the Government for the use which it made of a patented "superheater," in connection with Whitehead torpedoes.

A "superheater" is a device in which fuel is burned in the compressed air which drives the motor by which a torpedo is propelled through the water, so that the air is heated to such a degree that its energy is greatly increased, with the result that the range of the use of the torpedo is much extended.

The Court of Claims interpreted the petition as containing a claim that the defendant had contracted to pay appellant for fifty "superheaters " at $500 each, and also as claiming that it had infringed rights of the appellant in certain United States Patents by the purchase of 360 "superheaters-" from Whitehead & Company, a British corporation, and by itself manufacturing one hundred such "superheaters." Concluding as to the first claim that the petition did not state a cause of action in contract, and, as to the second, that it did not show title to the patents involved sufficient to support infringement, a demurrer to the petition was sustained and the suit dismissed.

The main contention in this court is that a cause of action in contract is stated with respect to all of the 510 "superheaters," but in the alternative, though faintly, it is claimed that the allegations also make out a case of infringement.

The appellant alleges that it was the owner of two United States Patents issued in 1902, covering the "superheater " device and that in 1905 it entered into a written contract with the Armstrong Company, a British corporation, for the use of improvements in "superheaters " owned by that company and at the time protected in

Great Britain by a provisional specification for a patent. A copy of this contract, attached to the petition, after reciting that the Armstrong Company proposes to apply for a patent in the United States upon the improvements in "superheaters" which it owns, and that it is desirous of granting to the appellant the exclusive license to use such invention "in connection with the Bliss-Leavitt torpedo" manufactured by appellant, proceeds to grant to appellant the "sole and exclusive license" to use such inventions for the full term of the letters patent thereafter to be procured for the purpose of propelling Bliss-Leavitt torpedoes wherever sold by the Bliss Company and "Whitehead torpedoes sold only to the United States Government."

The contract provides for the payment by the appellant of a royalty of $25 for each torpedo fitted with the Armstrong inventions under penalty of cancellation, and that the Armstrong Company shall pay all costs and expenses of procuring the contemplated patents and of protecting them against infringement.

The petition alleges that eight United States patents on the "superheater" device were procured by the Armstrong Company, variously dated from August 7, 1906, to November 14, 1911, but no assignment of rights under them was made to appellant other than such as it derives from the contract of 1905, which, it avers, has been fully recognized and its terms complied with, by both of the parties to it.

The reference in the amended petition to the two patents owned by the appellant are so meager and so vague that we conclude that liability in contract or for infringement must be derived, if at all, from the allegations applicable to the contract of 1905.

As to the contract.

The allegations are: that prior to 1907 Armstrong & Co. licensed Whitehead & Co., a British corporation, to

"use and exercise" its superheater inventions patented in Great Britain and in the United States but subject to the rights of appellant under its contract of 1905; that in June, 1907, the appellant granted a request by the defendant for permission to purchase from Whitehead & Co. not more than one hundred torpedoes containing the "superheater" invention, the amount of royalty "to be later settled"; that subsequently 50 torpedoes so equipped were purchased and were brought into the United States subsequent to June 1, 1908; but that no royalty was ever paid to appellant for the use of the "superheaters" upon them.

If the petition had stopped here, there might be substance in the claim that as to these fifty torpedoes a contract for royalty on the basis of *quantum meruit* should be implied. But the petition goes on and alleges: that in November, 1907, before the alleged purchase of the 50 torpedoes, in a treaty between the parties as to the amount of royalty to be paid, a demand by the petitioner of $500 for each "superheater" installed in a Whitehead torpedo was refused by the Government; that in December, 1910, and again in March, 1912, long after the alleged purchase, the prior discussion as to royalty was renewed, but without agreement; and finally it is averred "that petitioner, by letter dated March 19, 1912, declined to grant any reduction and no reduction has ever been granted, and petitioner has never consented to the use of said patented inventions or of said patented improvements thereon or any of them by defendant without payment of said royalty of $500 each."

It is too clear for discussion that these allegations, taken together, not only do not show a contract of the parties, express or implied, to pay a royalty in any amount, but that they distinctly and in terms negative the making of any such contract as is necessary to give the Court of Claims jurisdiction under the applicable section of the

Judicial Code, § 145, and the decisions of this court. *Schillinger* v. *United States,* 155 U. S. 163; *United States* v. *Berdan Fire-Arms Manufacturing Co.,* 156 U. S. 552; *Russell* v. *United States,* 182 U. S. 516; *Bigby* v. *United States,* 188 U. S. 400; *Harley* v. *United States,* 198 U. S. 229, 304; *Juragua Iron Co.* v. *United States,* 212 U. S. 297, 309; *Farnham* v. *United States,* 240 U. S. 537, 540.

Treating for peace with one claiming patent rights for which it paid a royalty of $25, falls far short of a "convention between the parties—a coming together of the minds " to pay $500, or any other amount, for the use of the device.

As to the claim for infringement.

The contract of 1905, relied upon, in terms granted to the appellant the "sole and exclusive license " to use the Armstrong inventions for the terms of the patents thereafter to be procured in Great Britain and in the United States "for the purpose of propelling Bliss-Leavitt torpedoes " (with which we are not concerned) "wherever sold by the Bliss Company and Whitehead torpedoes sold only to the United States Government."

Authority to maintain a suit for infringement against the United States can be derived only from the Act of Congress of June 25, 1910, c. 423, 36 Stat. 851, which provides that the "owner" of an infringed patent may recover reasonable compensation in the Court of Claims, and reserves to the United States "all defenses, general or special, which might be pleaded by a defendant in an action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise."

Giving to this statute, as we do, the liberal interpretation placed upon it in *Crozier* v. *Krupp,* 224 U. S. 290, and in *Cramp & Sons Co.* v. *International Curtis Marine Turbine Co.,* 246 U. S. 28, the "owner " who may maintain an infringement suit against the Government must have at least such an interest in the patent as without the

statute would support such a suit against a defendant other than the United States.

It has long been settled that a licensee may not maintain a suit for infringement, *Gayler* v. *Wilder*, 10 How. 477; *Littlefield* v. *Perry*, 21 Wall. ·205; *Paper-Bag Cases*, 105 U. S. 766; *Pope Manufacturing Co.* v. *Gormully and Jeffery Manufacturing Co.* (No. 3), 144 U. S. 248; and that to entitle an assignee or grantee to maintain such a suit under warrant of Rev. Stats., § 4919, such assignee or grantee must have an assignment, grant or conveyance, either of the whole patent, of an undivided part of it, or of an exclusive right under it "within and throughout a specified part of the United States." Any assignment or transfer short of one of these is a mere license giving the licensee no interest in the patent sufficient to sue at law in his own name for infringement or in equity without joining the owner of the patent. *Waterman* v. *Mackenzie*, 138 U. S. 252, 255; *Pope Manufacturing Co.* v. *Gormully*, 144 U. S. 224.

While the legal effect of the terms used, and not the name applied to the instrument containing them, will determine whether a transfer is an assignment or a license, nevertheless the language used is often, as in this case, of great significance in determining what that legal effect shall be.

The right granted the appellant by the contract of 1905 is termed in it a "license"; the appellant contracts, as licensees usually do, to pay a royalty for each torpedo fitted with the devices to be patented; the contract does not purport to grant an interest in the patent or any exclusive territorial rights, but only, with respect to the Whitehead torpedo, rights as to a single prospective purchaser—the Government of the United States; and the Armstrong Company contracts at its own cost "to take all necessary proceedings for protecting and defending the license to use  .   .   .   hereby granted " against

infringers. Palpably this is a mere license, not sufficient to sustain a suit for infringement.

Several minor questions, including some of practice, are argued in the brief for appellant, but the opinion of the Court of Claims deals with them thoroughly and satisfactorily and its judgment is

*Affirmed.*