## SIX WHEEL CORPORATION v. STERLING MOTOR TRUCK CO. OF CALIFORNIA et al.

### No. 6326.

Circuit Court of Appeals, Ninth Circuit.

May 18, 1931.

Frederick S. Lyon, Leonard S. Lyon, and Lewis E. Lyon, all of Los Angeles, Cal., for appellant.

William L. Connor, of Los Angeles, Cal., for appellees.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

SAWTELLE, Circuit Judge. ·

This is a suit in equity brought by the appellant corporation as purported assignee of United States letters patent No. 1,655,481, granted to David L. Van Leuven on January 10, 1928, application having been filed on February 18, 1925. In its bill of complaint, the plaintiff-appellant sought to obtain an injunction and damages against the defendants-appellees, relative to the sale and the use by the latter of a type of running gears of motor vehicles; such type being by the par-

ties hereto referred to as "six-wheel attachments." These devices, so sold and used, the appellant alleged, infringed upon the patented invention of Van Leuven.

The lower court held that the patent was valid, but that, because of the limited nature of the claims relied upon by the plaintiff, there was no infringement; whereupon the plaintiff appealed.

■ Though the case was argued on several grounds by counsel for each side, on appeal as well as in the court below, we are met in limine by the crucial question of jurisdiction, in relation to the sufficiency of the appellant's title to the patent in suit, and its consequent capacity to maintain the present action.

In the answer filed by the defendants in the court below, appellees herein, it was denied that Van Leuven had assigned his patent to the plaintiff company. The trial judge did not discuss this issue of fact and of law, but based his decision upon other grounds. Those other grounds, in the view that we take of the case, it is not necessary here to consider.

According to the contention of the appellees, the defense that the plaintiff has no title to the asserted right of action may be raised on appeal, though not urged in the court below. This view is supported by the case of Sterrett v. Second National Bank of Cincinnati, Ohio, 246 F. 753, 758, 3 A. L. R. 256 (C. C. A. 6); affirmed, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135. In that case, Circuit Judge Knappen used the following language: "It follows that in the present state of the record the defendant is entitled to a dismissal of the suit, notwithstanding its apparent failure to call to the attention of the court below the proposition on which our decision is based; for, if plaintiff had no title and no right of action in the court below, that court was without power to render decree in his favor. See Gt. Western Mining Co. v. Harris, supra, at pages 577, 578 of 198 U. S., 25 S. Ct. 770, 49 L. Ed. 1163. A defense that plaintiff has no title to the asserted right of action is always open."

Judge Knappen then points out the substantial importance of determining a jurisdictional question, in language that is pertinent to the present case: "A disposition by this court of the appeal without determination of the merits is unfortunate, and it is with reluctance that we have reached the conclusion that there is no escape from it. But lack of title in plaintiff is not a mere 'technicality,' in the ordinary meaning of that term,

for there is always, theoretically at least, a possibility that defendant may be subjected to further suit by the owner of the title and right of action."

In view of the answer of appellees in the lower court, however, it may be soundly argued that the jurisdictional question of the plaintiff-appellant's title was indeed put in issue before that tribunal, even though the issue thus raised was not considered by the trial judge. In this connection, the language of Mr. Justice Day in North Pacific Steamship Company v. Soley, 257 U. S. 216, 42 S. Ct. 87, 88, 66 L. Ed. 203, is in point: "In the present case the issue was raised by answer, and, therefore, it became necessary for the court to determine the question of jurisdiction upon the facts presented, and when brought directly here, it is the duty of this Court to review the decision upon the testimony as one presenting a jurisdictional question."

Though in the North Pacific Case the jurisdictional question was one of the amount involved, the reasoning is applicable to the jurisdictional facts in the instant case. See, also, Gilbert v. David, 235 U. S. 561, 567, 35 S. Ct. 164, 59 L. Ed. 360 (citizenship of parties); Roberts v. Lewis, 144 U. S. 653, 658, 12 S. Ct. 781, 36 L. Ed. 579 (same).

We are therefore of the opinion that, in the instant case, there is ample authority to warrant our considering the sufficiency of the appellant's title under the purported "assignment," as bearing upon the jurisdictional question of its ability to maintain the present suit.

Before determining what constitutes an assignment of a patent sufficient to enable the transferee to bring suit in his own name, it is necessary to ascertain what are the rights of the assignor; i. e., the inventor himself. Obviously he cannot assign more than he has; and the crucial question here, to be discussed later, is how much less he can grant and still term the transfer an assignment.

The right of an inventor to the product of his talent is recognized by the common law. A learned discussion of the origin and extent of this fundamental right—a right with which the instant suit is directly concerned—is found in the case of In re Brosnahan, Jr., 18 F. 62, 64 (Circuit Court, W. D. Mo.):

"It is to be observed that no constitutional or statutory provision of the United States was, or ever has been, necessary to the right of any person to make an invention, discovery, or machine, or to use it when made, or to sell it to some one else. Such right has always existed, and would exist now if all patent laws were repealed. It is a right which may be called a natural right, and which, so far as it may be regulated by law, belongs to ordinary, municipal legislation; and it is unaffected by anything in the constitution or patent laws of the United States.

"The sole object and purpose of the laws which constitute the patent and copyright system is to give to the author and the inventor a monopoly of what he has written or discovered, that no one else shall make or use or sell his writings or his invention without his permission. * * *"

We now turn to the source of the inventor's *exclusive* right to his device, the Constitution of the United States: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Article 1, § 8, cl. 8.

Defining the constitutional sanction for patent right, the Supreme Court has said: "It [the patent right] is a true monopoly, one having its origin in the ultimate authority, the Constitution. * * * If the patent be for a machine, the monopoly extends to the right of making, selling, and using, and these are separable and substantial rights. In Bloomer v. McQuewan, 14 How. 539, 547, 14 L. Ed. 532, 536, it is said that the grant is of 'the right to exclude everyone from making, using, or vending the thing without the permission of the owner.'" Henry v. A. B. Dick Company, 224 U. S. 1, 27, 32 S. Ct. 364, 371, 56 L. Ed. 645, Ann. Cas. 1913D, 880.

This exclusive right of the inventor to "make, sell and use" his invention has been further defined by statute, passed under the authority of the organic law.

"All exclusive rights in the nature of patents are created, and must be controlled by statutory provisions, and, therefore, it must appear that all the essential requisites of the law have been complied with." Latta v. Shawk, Fed. Cas. No. 8,116.

The present statute on the subject is found in 35 USCA § 40: "Every patent shall contain * * * a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States, and the Territories thereof."

At least two Chief Justices of the Supreme Court have interpreted these constitutional and statutory rights of the inventor to make, use, and sell the patented res. In Gayler et al. v. Wilder, 51 U. S. (10 How.) 477, 494, 13 L. Ed. 504, Chief Justice Taney said:

"Now the monopoly granted to the patentee is for one entire thing; it is the exclusive right of making, using, and vending to others to be used, the improvement he has invented, and for which the patent is granted. The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes.

"By the eleventh section of the act of 1836, the patentee may assign his whole interest, or an undivided part of it. But if he assigns a part under this section, it must be an undivided portion of his entire interest under the patent, placing the assignee upon an equal footing with himself for the part assigned."

If it is argued that Chief Justice Taney was interpreting merely an old statute that has since been superseded, the answer is that these same doctrines of patent law have been repeatedly re-enunciated in later Supreme Court decisions. These more recent expressions were voiced after the passage of the Act of July 8, 1870, upon which the present statute is based.

In the case of Crown Die & Tool Company v. Nye Tool & Machine Works, 261 U. S. 24, 36, 43 S. Ct. 254, 256, 67 L. Ed. 516, Chief Justice Taft used the following language: "It is the fact that the patentee has invented or discovered something useful and thus has the common-law right to make, use and vend it himself which induces the government to clothe him with power to exclude every one else from making, using or vending it. In other words, the patent confers on such common-law right the incident of exclusive enjoyment and it is the common-law right with this incident which a patentee or an assignee must have. * * * A patent confers a monopoly. So this court has decided in the Paper Bag Case [210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122], supra, and in many other cases. The idea of monopoly held by one in making, using and vending connotes the right in him to do that thing from which he excludes others."

In Woodbridge et al. v. United States, 263 U. S. 50, 55, 44 S. Ct. 45, 47, 68 L. Ed. 159, Chief Justice Taft again said: "The purpose of the clause of the Constitution concerning patents is in terms to promote the progress of science and the useful arts and the plan adopted by Congress in exercise of the power has been to give one who makes a useful discovery or invention a monopoly in the making, use and vending of it for a limited number of years."

From the foregoing, it will be seen that the irreducible quantum of the inventor's right in the res, even under the common law, is that of making, using, and vending. The Federal Constitution and the statutes passed thereunder simply make that right exclusive. The statutes certainly do not curtail the natural right; they enlarge it.

The right of an inventor or his assignee to bring suit for infringement, flowing as it does from the statutory right to "make, use and vend" exclusively as against the rest of the world, is likewise granted by statute: "Damages for the infringement of any patent may be recovered by action on the case, in the name of the party interested, either as patentee, assignee, or grantee." 35 USCA § 67.

■ The appellant herein is suing as "assignee." But the label that parties may give themselves is not conclusive; the actual legal effect of the agreements through which they seek to be clothed with authority must be determined by the court, regardless of the terminology used in designating the parties. In other words, the appellant must establish that it is an assignee in law and in fact, as well as in name. The purported assignee produces documents which profess to effect an assignment; but it is incumbent on the court to ascertain whether, as a matter of law, the provisions contained in those documents actually constitute an assignment.

■ The essentials of a patent assignment are obviously that an assignee should receive substantially those powers, rights, and privileges that the granting inventor himself has heretofore possessed. Again we find enlightenment from the Supreme Court in the leading case of Waterman v. Mackenzie, 138 U. S. 252, 255, 11 S. Ct. 334, 335, 34 L. Ed. 923: "The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws [of the United States]. The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent, com-

prising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. Rev. Stat. § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers. In the second case, jointly with the assignor. In the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."

, Rev. St. § 4898, cited above, since amended, reads in part as follows: "Every patent or any interest therein shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States." 35 USCA § 47.

Mr. Justice Gray, speaking for the court in Waterman v. Mackenzie, went on to say in that case: "In equity, as at law, when the transfer amounts to a license only, the title remains in the owner of the patent; and suit must be brought in his name, and never in the name of the licensee alone unless that is necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself."

Nor is the label that the parties may place upon the transfer controlling; for, in the same opinion, at page 256 of 138 U. S., 11 S. Ct. 334, 335, we find the following language, extremely pertinent to the case at bar: "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. * * * The grant of an exclusive right under the patent within a certain district, which does not include the *right to make, and the right to use, and the right to sell,* is not a grant of a title in the whole patent-right within the district, and is therefore only a license." (Italics our own.)

The repetition of the word "right" in the foregoing passage indicates the emphasis that Justice Gray laid upon the threefold essentials of a true assignment of a patent.

The Waterman Case is cited with approval in the Crown Die Case, supra, in E. W. Bliss Company v. United States, 253 U. S. 187, 192, 40 S. Ct. 455, 64 L. Ed. 852, and in Richmond Screw Anchor Company v. United States, 275 U. S. 331, 345, 48 S. Ct. 194, 72 L. Ed. 303, with Chief Justice Taft speaking for the court.

In still another opinion by the same Chief Justice, in United States v. General Electric Company et al., 272 U. S. 476, 489, 47 S. Ct. 192, 196, 71 L. Ed. 362, in which the principle enunciated in Waterman v. Mackenzie, is again approved, the following language is used: "Conveying less than title to the patent or part of it, the patentee may grant a license * * * for any royalty, or upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure."

In the recent case of Deitel v. Chisolm et al., 42 F.(2d) 172, 174 (C. C. A. 2.), Circuit Judge Manton carefully distinguished the cause before him from Waterman v. Mackenzie, which in reality re-enunciates the principles set down more than three-quarters of a century ago by Chief Justice Taney in Gayler et al. v. Wilder, supra. After more than eight decades of copious patent litigation, the soundness of those principles to-day remains unchallenged.

We are now brought to the crucial jurisdictional question in the present suit; namely, does the purported assignment by the inventor Van Leuven meet the criteria laid down by the Supreme Court?

Plaintiff's Exhibit 2 discloses an "assignment" by D. L. Van Leuven, "transferring" to the plaintiff-appellant full and exclusive interest in Van Leuven's "invention in running gear." The "assignment," however, contains a fatal qualification. It specifically sets forth that the grant is "subject to" and "part of" an "assignment agreement" entered into on the same date as the "assignment" itself, namely, November 4, 1927.

At the very beginning of this "assignment agreement" we find language that clearly indicates the inventor's desire to retain a firm proprietary grasp on his invention: "Whereas, the Inventor * * * is desirous of having said invention exploited and the licensing and use thereof managed and controlled *for him* (italics our own), and whereas said Company has been organized and created for said purpose."

Then, after granting to the plaintiff-appellant company, in sweeping language, "the full and exclusive right, title and interest in and to said invention," Van Leuven again proceeds so to qualify his grant as actually to leave the purported assignee but a mere shell of title: "Subject to the condition that said Company shall not itself manufacture, use or sell any device or devices embodying or containing said invention or engage in the sale of such devices, but shall grant licenses to others to make, use and sell the same, and that all licenses or rights to manufacture, use or sell devices embodying said invention shall be at all times upon the same uniform terms and conditions to each and all licensees."

In other words, the appellant merely received a license to license, so to speak. The company was but an agent of the inventor, to grant licenses on a royalty basis, licenses to others to do acts that the licensing company itself was not permitted to perform.

It is clear that the inventor himself retained the real ownership of the entire patent, an ownership that he definitely planned to safeguard: "The herein contained grant by the Inventor is upon the express condition that, in order to protect the interests of the Inventor in and to said invention, the right of the Company to license another or others is limited to the sale and offer for sale by all licensees of devices embodying said invention at uniform prices, and the Company agrees that it will not grant any license except upon said terms, and the Company shall from time to time establish the sales prices at which the manufacturer shall sell devices embodying said invention, which prices shall at all times be reasonable, due consideration being given to maintaining such a price as will render a reasonable profit to the manufacturer."

The document, indeed, is denominated an "Assignment Agreement"; yet its terms are a direct negation of a true assignment. It is as if A were to receive a deed to the entire city of San Francisco, with the saving clause that "this grant shall be subject to the condition that title to only Lot X, Block Y, shall actually pass to A." Far-fetched as this analogy may seem at first glance, it in reality understates the situation. In our supposititious deed, A is given some land, at least; under the "assignment agreement" in the instant case, the purported assignee has received, in unqualified ownership, not even a fraction of the granting patentee's common-law, constitutional, and statutory right "to make, use and vend" the invention. We

say common-law right, because, under the agreement, the plaintiff-appellant company has not even the authority to manufacture, use, or sell the invention in competition with others.

The "assignment agreement" closes with elaborate provisions for placing the plaintiff-appellant company in default for failure to make its guaranty payment to the inventor, with thirty days' notice. At the end of such thirty days, it is set forth that "this contract shall be thereby canceled and rescinded, and all rights in and to said invention and Letters Patent shall revert to said Inventor. * * * "

A patent "assignee" who is deprived of even the common-law right to make, sell, and use; who is restricted as to the contracts he shall make concerning the res; who must constantly keep in mind the "interests" of the purported grantor; who can lose the res, such as it is, for being in arrears with his guaranty—such an "assignee" is one by label only, for he does not enjoy that irreducible minimum of control over the patented article which has been defined by the Supreme Court as the true assignee's inalienable prerogative.

We are therefore of the opinion that the transfer of rights under the patent was not an assignment of the title or of the asserted right of action, and that plaintiff-appellant herein is without capacity to maintain this suit in its own name.

Reversed, with instructions to dismiss the suit.

WILBUR, Circuit Judge, concurs.