Whitaker, Judge,
delivered the opinion of the court:
These two suits by the Wing Engineering Corporation, as licensee, and the Chrysler Corporation, as owner, have been consolidated for trial.
*261 The only two questions now before the court are: first, whether the Wing Engineering Corporation may maintain its action under section 1498 of Title 28 TJ. S. C.; and, second, the trial commissioner’s recommendation for the dismissal of the intervening petitions of Estelle Zap and Morris Lavine for want of prosecution.
Intervenors Estelle Zap and Morris Lavine contend that certain assignment of the patents in suit, upon which the right of plaintiffs to maintain their suits depends, are void, and that they are the rightful owners of the patents in suit. They, however, presented no evidence at the trial to support the allegations of their petitions, although they were given full opportunity to do so. For want of prosecution, their intervening petitions are dismissed.
On the first question, of the right of the Wing Engineering Corporation to maintain its suit, the commissioner’s opinion states that the Wing Engineering Corporation owned an undivided interest in the patent, and as such was entitled to bring the action under section 1498, Title 28, TJ. S. C. The reasons given by the commissioner for this conclusion are sound.
The Chrysler Corporation on October 19, 1948, was the owner of the patent in suit through mesne assignments. On that date it executed an instrument transferring to Wing Engineering Corporation “an exclusive license, with right to grant sub-licenses, to make, use and sell in the United States of America devices embodying some or all of the inventions covered by the said patents * *
Under paragraph 5 the licensee was given the right “to notify the infringers of such invention, and to enter into negotiations with the infringers looking toward the granting of licenses to them on the terms herein outlined and the collection of damages for past infringements.” It Was further provided:
Should such negotiations fail, Engineering may notify Chrysler in writing of the infringement and of Engineering’s desire to sue the infringers. If Chrysler shall not elect to institute suit, within ninety (90) days after receipt of such written notice, Engineering shall have the right to do so at its own expense. * * * Recoveries from any suit instituted under this paragraph *262 shall be applied first to offset any proper litigation expense of the parties, and any remaining balance shall be divided equally between the parties.
The license granted, however, was subject to the reservation of the right in Chrysler Corporation and its subsidiary and controlled companies “to make, have made, use and sell devices embodying or adapted to be installed in structures which embody some or all of the inventions covered by said patents.”
Since the license was exclusive as to all persons, except the owner and its subsidiary and controlled companies, and especially since the licensee had the right to sue infringers, we do not think it can be doubted that an undivided interest in the patent was granted Wing Engineering Corporation by Chrysler Corporation. The very right was granted which is asserted and attacked in this suit, to wit, the right to sue infringers for damages.
If defendant had sought a license to use the inventions here in suit, plaintiff Wing Engineering Corporation was the only entity having a right to grant it such a license. Such a right in Wing Engineering Corporation is an ownership right within the meaning of the jurisdictional statute.
Section 1498 Title 28, U. S. C. gives the “owner” a right to bring a suit against the United States for the infringement of its patent. The section reads:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
This does not mean the owner of the entire right in the patent. It means a person who has “at least such an interest in the patent as without the statute would support such a suit against a defendant other than the United States.” Bliss v. United States, 253 U. S. 187, 191, 192.
In Crown Die & Tool Company v. Nye Tool & Machine Works, 261 U. S. 24, the court said that what the Government granted by its patent was not the right to make, use, or vend *263 the invention, but the right to exclude others for a certain period from making, using and vending it.
The Wing Engineering Corporation was given the exclusive right, subject to the reservation mentioned, to make, use and vend the article, and was given the right to exclude all others except the licensor from doing so. The Wing Engineering Corporation, therefore, had all the rights which the Government granted by its patent, except for the reservation in the so-called licensor.
The case of Independent Wireless Telegraph Company v. Radio Corporation of America, 269 U. S. 459, was a suit between private corporations. The Eadio Corporation had an exclusive license to make, use, and vend apparatus embodying the patent, subject to a reservation in the licensor to make, use and vend it. The Radio Corporation brought a suit in equity for infringement against the Independent Wireless Telegraph Company, joining as a party plaintiff, the De Forest Eadio Telephone & Telegraph Company, which was the original assignee of the patent issued to Lee De Forest, alleging that the De Forest Eadio Telephone & Telegraph Company had refused to give its assent to the bringing of the suit in its name.
The Supreme Court held it was entitled to do so. It cited with approval former decisions holding that, where the li-censor had agreed to sue infringers, a licensee, under section 4919 of the Eevised Statutes, could bring an action for infringement in the name of the patentee, although that statute gave the right to bring a suit for infringement only to a “patentee, assignee or grantee.” But in Bliss v. United States, supra, it was said a licensor could not maintain an action for infringement. The distinction between the two cases is that in the Bliss case the licensor was authorized to sell to only one person; whereas, in the Radio Corporation case it had an exclusive license, subject to the reservation in the licensor to make, use and vend.
In the Independent Wireless Telegraph Company case, supra, the Court further held that a licensee had a right to maintain a suit in equity under section 4921 Eevised Statutes, by joining the owner of the patent, notwithstanding the owner’s refusal to consent to such joinder, and although there *264 is “no express authority given to the licensee to use the name of the patent-owner in equity.” The court said, at page 469:
It seems clear then on principle and authority that the owner of a patent who grants to another the exclusive right to make, use or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain damages for the injury to his exclusive right by an infringer or to enjoin infringement of it. Such exclusive licenses frequently contain express covenants by the patent-owner and licensor to sue infringers that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation. But without such express covenants, the implied obligation of the licensor to allow the use of his name is indispensable to the enj oyment by the licensee of the monopoly which by personal contract the licensor has given. Inconvenience and possibly embarrassing adjudication in respect of the validity of the licensor’s patent rights, as the result of suits begun in aid of the licensee, are only the equitable and inevitable sequence of the licensor’s contract, whether express or implied.
It further said at page 473:
The objection by the defendant that the name of the owner of the patent is used as a plaintiff in this suit without authority is met by the obligation the owner is under to allow the use of his name and title to protect all lawful exclusive licensees and sub-licensees against infringers, and by the application of the maxim that equity regards that as done which ought to be done. Camp v. Boyd, 229 U. S. 530, 559; United States v. Colorado Anthracite Company, 225 U. S. 219, 223; Craig v. Leslie, 3 Wheat. 563, 578. The court should on these grounds refuse to strike out the name of the owner as co-plaintiff put in the bill under proper averment by the exclusive licensee.
The owner beyond the reach of process may be made co-plaintiff by the licensee, but not until after he has been requested to become such voluntarily. If he declines to take any part in the case, though he knows of its imminent pendency and of his obligation to join, he will be bound by the decree which follows. * * *
As stated, this was a suit between private individuals, but Bliss v. United States, supra, says that section 1498 embraced *265 within the word “owner” a person who had “at least such an interest in the patent as without the statute would support such a suit against a defendant other than the United States.”
Under the holding of these two cases, therefore, it would seem to follow, necessarily, that an exclusive licensee, subject to the stated reservation, is an “owner” in the sense that word is used in section 1498, and as such is entitled to sue infringers for damages, and that it has the right to join as a party plaintiff the patentee or his assignee, notwithstanding the refusal of the assignee to give its assent thereto.
For the reasons stated, in addition to those given by the commissioner in his opinion, we hold that plaintiff Wing Engineering Corporation has the capacity to maintain this suit. The intervenors’ petitions will be dismissed.
These cases will be remanded to the commissioner for further proceedings not inconsistent with this opinion.
It is so ordered.
LaRAMORe, Judge; Madben, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
eindings oe eact
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Donald E. Lane, makes findings of fact as follows:
1. These two suits are for the recovery of reasonable and entire compensation for alleged infringement of a number of patents relating to aircraft controls, such as wing flaps and airfoils, by defendant’s B-17 bombers. The suits have been consolidated for trial.
2. The suits were filed by Wing Engineering Corporation, hereinafter called Wing, and Chrysler Corporation, hereinafter called Chrysler. Wing designated Chrysler as a co-plaintiff without Chrysler’s consent.
3. Intervenor petitions were filed in both suits by Estelle Zap, Administratrix of the Estate of Edward F. Zap, also known as Edward F. Zaparka, and Morris Lavine, hereinafter called Zap and Lavine, respectively.
4. Wing’s allegations of patent infringement are now based on the following five United States letters patent:
*266 a. Zaparka 1,893,064 (claims 9-12, incl.) issued January 3, 1933, to Zap Development Company [sic], a corporation of Delaware.
5.Zaparka 1,971,590 (claims 1-6, incl., 9, 11-17 incl., and 29-32, incl.) issued August 28,1934, to Zap Development Corporation, a corporation of Delaware.
g. Zaparka Reissue 19,412 (claims 3,7, 8, and 9) issued January 1,1935, to Zap Development Company, a corporation of Delaware.
d. Zaparka 2,119,305 (claims 12-18, incl.) issued May 31,1938, to Zap Development Corporation, a corporation of Delaware.
e. Joyce 2,205,479 (claims 1, 2, and 3) issued June 25, 1940, to Zap Development Corporation, a corporation of Delaware.
5. The Zap and Lavine allegations of patent infringement are now based on the five patents as set out in finding 4, but omit claim 16 of the 1,971,590 patent, and include two additional patents, namely:
/. Zaparka 2,170,886 (claims 12-18, incl.) issued August 29, 1939, to Zap Development Corporation, a corporation of Delaware.
g. Zaparka 2,170,887 (claims 1, 4, 5, and 6) issued August 29, 1939, to Zap Development Corporation, a corporation of Delaware.
6. Zaparka patents 1,893,065 and 1,971,592 are also mentioned in the first Zap and Lavine petition, but no claim or claims thereof are set forth as required by Rule 12 (e).
7. Defendant’s motion for separate determination of jurisdictional issue of ownership of patents in suit and right to sue was allowed by the court on February 8, 1956. After due notice, the trial on this sole issue was held June 13,1956. At the trial, Wing offered its evidence on the sole issue of ownership and right to sue; Chrysler was not formally represented ; Zap and Lavine were represented specially by local counsel, but no evidence was offered on behalf of Zap and Lavine. On June 29, 1956, counsel for Wing entered his appearance as counsel for Chrysler without the consent of Chrysler.
8. The jurisdictional statute, Title 28 U. S. C. Sec. 1498, provides:
*267 Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. * * * [Emphasis added.]
9. The issue for determination is which party or parties are entitled to maintain this suit under said jurisdictional statute. Ownership of the several patents in suit is based on various assignments, agreements, change of name, and license documents. Plaintiff Wing offered a number of such documents in evidence at the trial.
10. Events pertinent to the ownership issue are tabulated chronologically as follows:
March 5, 1931
Certificate of Incorporation of the Zap Development Corporation was filed in the office of the Secretary of State of the State of Delaware.
March 30, 1931
Zaparka executed assignments of his entire right, title and interest to Zap Development Company [sic] in two applications for patents which eventually matured into patents 1,893,064 and 1,893,065. The two assignments were subsequently recorded in the United States Patent Office on October 3, 1932.
April 3, 1931
The two Zaparka applications mentioned above were filed in the Patent Office.
May 1, 1931
An “Indenture” was made as of this date by which Zaparka assigned certain prior inventions, etc., and assigned all inventions, etc., made thereafter while employed, to Zap Development Corporation, a Delaware corporation. This blanket assignment was acknowledged before a notary public on May 4, 1931, but there is no evidence that it was ever recorded in the Patent Office.
*268 January 19, 1932
Zaparka application for patent on sustaining device for aircraft filed in Patent Office. This application later became patent 1,971,590.
January 3, 1933
Zaparka patents 1,893,064 and 1,893,065 issued to the Zap Development Company [sic].
May 31, 1933
Zaparka application for patent on airfoil mechanism filed in Patent Office. This application later became patent 2,170,886.
June 1, 1933
Zaparka application for patent on flap device filed in Patent Office. This application later became patent 2,170,887.
June 12, 1933
Zaparka application for patent on simplified flap operating means filed in Patent Office. This application later became patent 2,119,305.
July 20, 1933
Zaparka executed assignments of his full and exclusive rights to Zap Development Corporation in two applications for patents which eventually matured into patents 1,971,590 and 2,119,305. The two assignments were recorded in the Patent Office on July 22, 1933.
August 28, 1934
Zaparka patent 1,971,590 issued to the Zap Development Corporation.
November 12, 1934
Zaparka application for the reissue of patent 1,893,065 filed in the Patent Office. This application later became Eeissue Patent 19,412.
January 1, 1935
Zaparka Eeissue Patent 19,412 issued to Zap Development Company [sic].
August 13, 1937
Temple N. Joyce executed assignment of the full and exclusive right to Zap Development Corporation in an invention relating to wing flaps. This application ma *269 tured into Joyce patent 2,205,479. The assignment was recorded in the Patent Office on August 18, 1937.
August 14, 1937
Joyce application for patent on wing flap filed in Patent Office, and this application later became Joyce patent 2,205,479, noted above.
May 31, 1938
Zaparka patent 2,119,305 issued to Zap Development Corporation.
August 29, 1939
Zaparka patents 2,170,886 and 2,170,887 issued to Zap Development Corporation.
June 25, 1940
Joyce patent 2,205,479 issued to Zap Development Corporation.
June 27, 1940
Certificate of amendment of certificate of incorporation of Zap Development Corporation was filed in the office of the Secretary of State of the State of Delaware changing the name Zap Development Corporation to Detroit Development and Manufacturing Corporation.
July 13, 1940
Certificate of Incorporation of Engineering and Inspection Corporation of America was filed for record with the State Tax Commission of the State of Maryland.
December 28, 1942
A unanimous consent to dissolution of Detroit Development and Manufacturing Corporation was executed by the vice president and the secretary of Chrysler Corporation, as record owner and holder of all the outstanding stock of said Detroit Development and Manufacturing Corporation.
December 31, 1942
Detroit Development and Manufacturing Corporation, by its treasurer and its secretary, executed an assignment of entire right, title and interest in and to a number of patents including—
1,893,064
1, 971, 590
Eeissue 19,412
2,119,305
*270 2,205,479
2.170.886
2.170.887
to Chrysler Corporation, a corporation of Delaware. This assignment included all rights to sue and recover for past infringement. The assignment was subsequently recorded in the Patent Office on January 16, 1950.
January 5, 1943
The consent to dissolution of Detroit Development and Manufacturing Corporation was filed in the office of the Secretary of State of the State of Delaware.
October 19, 1943
Chrysler Corporation and Engineering and Inspection Corporation executed an agreement set out in full hereinafter. The agreement purports to grant Engineering and Inspection Corporation an exclusive license, with right to grant sub-licenses, to make, use and sell devices embodying inventions covered by a number of patents including those patents here in suit. The agreement reserved to Chrysler and its subsidiary and controlled companies the right to make, have made, use and sell such devices, subjected the sub-licensees to such terms as Chrysler might reasonably require, stated conditions under which Chrysler and/or the licensee might institute infringement suits, and stated conditions under which Chrysler might cancel the license. The agreement was executed by the president and secretary of Chrysler and the president and acting secretary of Engineering and Inspection Corporation. There is no evidence that this agreement was ever recorded in the Patent Office.
May 20, 1946
Certificate of Articles of Amendment of the charter of the Engineering and Inspection Corporation of America to change said corporate name to Wing Engineering Corporation, and to change the par value of corporation stock, was executed and acknowledged by the president and secretary of Engineering.
July 12, 1946
The foregoing certificate of amendment was filed for record with the State Tax Commission of the State of Maryland.
*271 January 16, 1950
The assignment of December 31, 1942, of the patents in suit, to Chrysler Corporation was recorded in the Patent Office.
July 25, 1950
Chrysler Corporation, by its chief patent counsel, wrote counsel for Wing of its reluctance to being a party plaintiff and suggested Wing join Chrysler as a party defendant because of Chrysler’s ownership of the legal title of the patents involved. The letter is plaintiffs’ exhibit 21.
August 3, 1950
The first Wing petition was filed in the Court of Claims.
May 1, 1956
The Secretary of State of the State of Delaware certified that “Zap Development Company” is not and never was the title of a Delaware corporation.
11. Plaintiff Wing Engineering Corporation is a corporation of the State of Maryland. Plaintiff Chrysler Corporation is a corporation of the State of Delaware.
12. The indenture dated May 1,1931, signed by Edward E. Zaparka, and acknowledged before a notary public on May 4, 1931, reads as follows:
Indenture, made as of the 1st day of May 1931, between Edward Zaparka, sometimes known as Edward Zap, hereinafter called Zaparka, of the first part, and Zap Development Corporation, a Delaware Corporation, hereinafter called the Corporation, of the second part.
Witnesseth :
Concurrently with the execution of this Indenture, the Corporation has employed Zaparka for the purpose of carrying on design, development and experimental work in connection with aircraft, rotors, wing flaps and such other matters as the Corporation is interested in from time to time.
In consideration of the premises and of the sum of one dollar ($1.00) and other valuable considerations, the receipt of which is hereby acknowledged, Zaparka has sold, assigned and transferred and hereby does sell, assign and transfer to the Corporation, its successors and assigns forever, all inventions, discoveries, designs, formulae, trade secrets, secret processes, patents, patent applications, drawings, work sheets, tabulations and *272 equipment heretofore made and now owned by him relating to or useful in connection with, aircraft, rotors and wing flaps, and all inventions, discoveries, designs, formulae, trade secrets, secret processes, patents, patent applications, drawings, work sheets, tabulations, equipment and information heretofore or hereafter while in the employ of the Corporation made or obtained by him relating to any matter whatsoever.
And by way of further assurance, Zaparka for himself, his heirs, executors and administrators, has agreed and hereby does agree that he will reduce to writing and keep for the benefit of the Corporation all formulae, specifications and records of his work and of the discoveries made and information obtained by him and will make drawings of special machinery and equipment and in every way give the Corporation the permanent benefit of his experience and work; that from time to time upon the request of the Corporation he will make application for the issuance of letters patent in such form and in such countries .as the Corporation shall specify, upon all inventions, designs, formulae and processes relating to or useful in connection with aircraft, rotors and wing flaps heretofore made or discovered and now owned by him, and upon all inventions, designs, formulae and processes whatsoever made or discovered by him while in the employ of the Corporation, and that from time to time he will execute all documents, take all rightful oaths and do all acts requested by the corporation to effect the issuance of such letters patent in his name and the assignment thereof to the Corporation or the issuance thereof in the name of the Corporation.
In witness whereoe, Zaparka has hereunto set his hand and seal as of the day and year first above written.
[Edward Zaparka]
[l. s.]
State oe New York 1 m. County oe J
On this 4th day of May, 1931, before me personally appeared Edward Zaparka, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.
[seal] J. Sheldon,

Notary Public, New Yorh County. Cleric's No. 552, Register’s No. 2 S Jfi9. Commission expires March 30 th, 1932.

*273 13. The assignment of the patents in suit by Detroit Development and Manufacturing Corporation, formerly Zap Development Corporation, to Chrysler Corporation, dated December 31,1942, reads as follows:
ASSIGNMENT
Whereas, Detroit Development and Manufacturing Corporation, a Corporation duly organized under the laws of the State of Delaware, is the owner of the following United States Letters Patents and the inventions set forth, viz:
*****
[25 patents are listed by number, date invention, and inventor]
Whereas, Chrysler Corporation, a Corporation duly organized under the laws of the State of Delaware, and having a place of business at Highland Park, Michigan, is desirous of acquiring the entire right, title and interest in and to said Letters Patents and in and to the inventions covered thereby, together with any continuations, divisions, reissues or renewals thereof, and in and to any and all rights, privileges, claims and demands, accrued or hereafter to accrue under said patents and inventions together with the right to enforce the same.
Now, Therefore, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, receipt whereof is hereby acknowledged and confessed, the said Detroit Development and Manufacturing Corporation does hereby sell, assign and transfer unto the said Chrysler Corporation the full right, title and interest in and to said Letters Patents and in and to the inventions covered thereby, and any divisions, continuations, reissues or renewals thereof, together with any and all rights to sue and recover for past infringement upon any or all of the said Letters Patent.
In Witness Whereof, the said Detroit Development and Manufacturing Corporation has hereunto affixed its hand and seal through its duly authorized officers on this 31st day of December, 1942.
Detroit Development and Manufacturing Corporation,
By H. A. Davies, Treasurer.
[seal]
B. B. Pomeroy,

Asst. Secretary.

*274 State oe Michigan 1 go . County oe Wayne j °
Personally appeared before me this 31st day of December, 1942, the said H. A. Davies and R. B. Pomeroy, each known to me to be the Treasurer and Assistant Secretary, respectively, of the Detroit Development and Manufacturing Corporation, and acknowledged the above instrument to be the free act and deed of the said Corporation, and that they were authorized to make the above transfer.
[seal] Kate Vance,

Notary Public, Wayne Comfy, Michigan.

My commission expires 6-24r-44.
14. The certificate of incorporation of the Zap Development Corporation provided, among other things, that the powers of the corporation shall be exercised by the Board of Directors. The assigmnent of the patents in suit to Chrysler, dated December 31, 1942, was executed by the treasurer and assistant secretary as duly authorized officers of Detroit Development and Manufacturing Corporation, formerly Zap Development Corporation, and was received and recorded in the Patent Office. There was no evidence offered to support the Zap and Lavine contention that said assignment was executed without authority.
15. The agreement dated October 19, 1943, signed by the president and secretary of Chrysler Corporation, and by the president and acting secretary of Engineering and Inspection Corporation, as duly authorized officers, reads as follows:
AGREEMENT
This Agreement, made and entered into as of the 19th day of October, 1943, by and between Chrysler Corporation, a Delaware Corporation, having a place of business at Highland Park, Michigan, hereinafter called “Chrysler”, and Engineering and Inspection Corporation, a Maryland Corporation, having a place of business at Court Square Building, Baltimore, Maryland, hereinafter called “Engineering”.
WITNESSETH:
Whereas, Chrysler is the owner of certain United States Letters Patents as shown on the attached Sched *275 ule A, which is made a part hereof, all relating to aircraft wing flaps, and
Whereas, Engineering expects to obtain a contract with the United States Government for the designing and building of one or more aircraft wings in which it would like to incorporate some of the inventions of said patents, and is desirous of acquiring a license, with right to sub-license, under said patents.
Now, therefore, for and in consideration of the sum of One Dollar ($1.00), and other good and valuable considerations, each to the other in hand paid, receipt whereof is hereby acknowledged and confessed, the parties hereto agree as follows:
1. Except for the right which Chrysler hereby specifically reserves for itself and its subsidiary and controlled companies, to make, have made, use and sell devices embodying or adapted to be installed in structures which embody some or all of the inventions covered by said patents of Schedule A, Chrysler hereby gives and grants unto Engineering an exclusive license, with right to grant sub-licenses, to make, use and sell in the United States of America devices embodying some or all of the inventions covered by the said patents; it being understood and agreed that any sub-licenses granted by Engineering shall be on the same royalty basis as is herein set forth to be paid by Engineering and subject to all of the other terms of this Agreement or other terms which Chrysler may reasonably require.
2. Engineering shall pay unto Chrysler a royalty equal to one per cent (1%) of the selling price of all complete aircraft made and sold by Engineering under this license or for which Engineering shall make or sell devices embodying or which, when assembled, shall be part of a structure which embodies some or all of the herein licensed inventions. It is understood and agreed that in those instances whenever Engineering shall not manufacture or sell aircraft or parts thereof but shall grant a sub-license or sub-licenses under the herein licensed patents, Engineering shall pay unto Chrysler one-half of one percent (%%) of the selling price of the complete aircraft in which some or all of the said inventions are used, retaining the other one-half of one percent (%%) for its engineering and sales efforts.
3. Engineering shall keep and maintain, and shall require its sub-licensees to keep and maintain, complete and accurate books and accounts, open at all reasonable times to the inspection of Chrysler, showing its or their operations hereunder and under any such sub-licenses, *276 as well as the selling prices of the complete aircraft in which the said inventions are used, and shall render statements to Chrysler on or before the 15th days of each January, April, July and October, showing the number and selling prices of the aircraft sold hereunder or under such sub-licenses during the quarterly periods immediately preceding the first days of said month, and shall accompany such reports with payment of royalties due for each such period.
4. Engineering agrees that it will suitably mark devices produced under this license with proper notice of the patents, the inventions of which are utilized by or with such devices, in accordance with the United States statutes relating to patent marking, as such statutes may now or later exist. Engineering agrees to require its sub-licensees to do likewise.
5. In the event, during the continuation of this license, or at any time previous thereto, of infringement by others upon any of the patents of Schedule A, Engineering shall have authority to notify the infringers of such invention and to enter into negotiations with the in-fringers looking toward the granting of licenses to them on the terms herein outlined and the collection of damages for past infringements. Should such negotiations fail, Engineering may notify Ci-irysler in writing of the infringement and of Engineering’s desire to sue the infringers. If Chrysler shall not elect to institute suit, within ninety (90) days after receipt of such written notice, Engineering shall have the right to do so at its own expense, but with right to Chrysler, if it so desires, to participate at Chrysler’s own expense. Engineering’s right to institute suit shall terminate upon termination of the herein granted license, or in the event it does not institute suit within ninety (90) days after Chrysler’s failure to elect to do so. Recoveries from any suit instituted under this paragraph shall be applied first to offset any proper litigation expense of the parties and any remaining balance shall be divided equally between the parties.
6. It is specifically agreed that if Engineering has not acquired, on or before February 1,1944, a completely executed agreement with the United States Government for the designing and building by Engineering of one or more aircraft wings in which some or all of the herein licensed inventions are to be incorporated, or if Engineering shall not complete such contract, Chrysler may cancel this license. It is further agreed that if Engineering, or any of its sub-licensees, shall not, on or before *277 January 1,1946, have secured production orders for complete aircraft or parts thereof embodying some or all of the licensed inventions, or if Engineering and its sub-licensees shall thereafter discontinue the production and sale of complete aircraft or parts thereof embodying some or all of the herein licensed inventions, or if, during any calendar year beginning with the year 1946, Engineering shall not pay to Chrysler minimum royalties hereunder of Ten Thousand Dollars ($10,000.00) per year, Chrysler may cancel this license.
7. It is further agreed that in the event of insolvency, bankruptcy, or appointment of a receiver for Engineering, or in the event Engineering shall default in any of its obligations hereunder, Chrysler shall have the right to cancel the license herein granted.
8. Unless cancelled under the terms hereof, the license herein granted shall run for the full life and term of the last to expire of the licensed patents.
In witness whereof, the parties hereto have hereunto affixed their hands and seals through their duly authorized officers as of the day and date first above written.
16. The Schedule A mentioned in the foregoing agreement lists a number of patents including all of the several patents here in suit. Mr. Temple N. Joyce, who signed the agreement as president of Engineering and Inspection Corporation, testified that the agreement was still in effect. Negotiations between Mr. Joyce and the Material Command, Army Air Corps, Wright Field, Dayton, Ohio, with respect to alleged infringement of Zap patents by the B-17 airplane, took place during a four-year period prior to the filing of the first Wing petition in these suits.
17. After proofs were closed on the ownership issue, defendant filed, with its request for findings of fact, copies of certain annual reports filed by Chrysler Corporation with the Securities and Exchange Commission, pursuant to the Securities and Exchange Act of 1934. The reports purport to list the affiliates or subsidiaries of Chrysler Corporation. Whether or not Chrysler Corporation has had a large or a small number of subsidiary and controlled or affiliated companies is not material to the present issue, and evidence thereon was not offered at the trial.
18. Section 261 of Title 35 USC relates to ownership and assignment of patents, and states:
*278 §261. Ownership; assignment
Subject to the provisions of this title, patents shall have the attributes of personal property.
Applications for patent, patents, or _ any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
A certificate of acknowledgment under the hand and official seal of a person authorized to administer oaths within the United States, or, in a foreign country, of a diplomatic or consular officer of the United States or an officer authorized to administer oaths whose authority is proved by a certificate of a diplomatic or consular officer of the United States, shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent or application for patent.
An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from its date or prior to the date of such subsequent purchase or mortgage.
19. The intervenors, Estelle Zap, Administratrix of the Estate of Edward F. Zap, also known as Edward F. Zaparka, and Morris Lavine, do not possess any right, title or interest in the several patents here in suit.
20. Plaintiff Wing Engineering Corporation is a licensee with right to sue infringers under the several patents in suit.
21. The co-plaintiff, Chrysler Corporation, is the legal owner of the entire right, title and interest in the patents in suit, subject however to a license agreement granting Wing Engineering Corporation the right to make, use, and sell devices embodying inventions covered by the patents, the right to sub-license, and the right to negotiate with alleged infringers and to institute suit against infringers in the event Chrysler does not elect to institute suit.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter *279 of law that plaintiff Wing Engineering Corporation is an owner of the several patents in suit, and is entitled to join plaintiff Chrysler Corporation as a party plaintiff and to maintain this suit.; that intervenors are not owners of any of the patents in suit and are not entitled to recover, and that intervenors’ petitions must be and they are dismissed.
These cases are remanded to the Commissioner for further proceedings not inconsistent with this opinion.