**REDLER CONVEYOR COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 5886.

United States Court of Appeals
First Circuit.

June 7, 1962.

---

———◆———

Robert J. Richards, Jr., with whom John T. Powell and Hale and Dorr, Boston, Mass., were on brief, for petitioner.

Michael I. Smith, Attorney, Department of Justice, Washington, D. C., with whom John B. Jones, Jr., Acting Asst. Atty. Gen., and Lee A. Jackson and Harold C. Wilkenfeld, Attorneys, Department of Justice, Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

### WOODBURY, Chief Judge.

This is a petition to review a decision of the Tax Court of the United States holding that certain sums received by the taxpayer-petitioner during its tax years 1939, 1940, 1945 and 1946 were payments of royalties and therefore constituted personal holding company income under the applicable statutes. Section 403(a) of the Revenue Act of 1938, 52 Stat. 558; Section 502(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 502(a) quoted in the margin.[1]

The taxpayer-petitioner, Redler Conveyor Company, a Massachusetts corporation and the owner of a number of United States and Canadian patents on conveyor belt devices of one sort or another, is a wholly owned subsidiary of another Massachusetts corporation, Pneumatic Scale Company, Limited. In the income tax returns which Redler filed with the Collector of Internal Revenue for the District of Massachusetts it gave its business as: "Grantors of Licenses on Conveyors." It did not file personal holding company tax returns for any of the years here involved.

From 1932 through the tax years in question Redler entered into various agreements, concededly in the form of licenses with Stephens-Adamson Mfg. Co. of Illinois and Stephens-Adamson Mfg. Co. of Canada, Limited, involving some of its United States and Canadian patents and applications. The sole question is whether the agreements under which it received payments during the years in dispute are license agreements or assignments. If the agreements are licenses the payments made under them are royalties as defined in the applicable statutes. If they are not, and the agreements are assignments, the payments are not royalties and not taxable under the statutes.

"Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." Waterman v. Mackenzie, 138 U. S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891). And in the same case the Court at page 255, 11 S.Ct. at page 335, although in a context different from the present, laid down the rule for deciding whether a particular instrument is an assignment or a license in the following language:

> "The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or,

---

[1]. The language of both sections is practically identical. It is: "For the purposes of this subchapter [title in the 1938 Act] the term 'personal holding company income' means the portion of the gross income which consists of:

"(a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities."

3d, the exclusive right under the patent within and throughout a specified part of the United States. Rev.Stat. § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."

The agreements with which we are here concerned are described in detail in the opinion of the Tax Court. We shall not undertake to describe them all over again. General considerations persuade us that the Tax Court's analysis and result is entirely correct.

The agreements show every evidence of careful and skillful draftsmanship. And they are licenses in form in that the parties are described as licensor and licensee and the payments to be made under them are called royalties. Substance controls words to be sure, but when parties obviously skilled in the business at hand use words of art in formal documents carefully drawn we can only assume that the words used were intended to mean what they say. We can hardly assume that their use was inadvertent or the product of bumbling draftsmanship. Cf., E. W. Bliss Co. v. United States, 253 U.S. 187, 192, 40 S.Ct. 455, 64 L.Ed. 852 (1920).

Moreover, Redler at one time or another treated the agreements as licenses, for in its income tax returns for the years involved it claimed depreciation allowances with respect to the patents covered by the agreements. And in 1950 outstanding agreements with Stephens-Illinois were cancelled and Redler transferred the patents covered by the agreements to its parent Pneumatic, which in turn assigned them to Stephens-Illinois. If the agreements were actually assignments there would be no call, indeed no basis, for this roundabout maneuver, for Stephens-Illinois already was the owner of the patents by assignment.

More importantly, however, and indeed basically, the substance of the agreements does not belie but supports the foregoing inferences from the language used in the agreements and the conduct of Redler with respect to them. The agreements do not purport to transfer either entire or undivided interests in the patents but instead only segregated rights to some but not all of the uses of the patents. That is to say, Redler reserved from the grants to the Stephens companies use of the patented devices for the handling of fuel and ash in connection with the heating of buildings (this as to Stephens-Illinois only), use of the devices in connection with vessels of foreign registry, and the right to grant nonexclusive licenses to its parent, Pneumatic, for the manufacture, use and sale of the patented devices to its present and future customers. There is nothing in the stipulation of facts on which this case was tried to support the taxpayer's argument that these reservations were insubstantial. So far as we can tell they detract materially from the whole bundle of patent rights which might have been transferred.

The long and short of the matter is that the agreements did not convey the whole patents comprising the exclusive right to make, use and vend the patented devices throughout the United States, or Canada, or an undivided part of that exclusive right, or exclusive rights under the patents within any specified part of the United States and Canada. The rights transferred were only segregated rights to some but not all of the possible uses of the patents.

The agreements in both tenor and substance are only nonexclusive licenses, see Walen v. United States, 273 F.2d 599 (C.A. 1, 1959), not assignments as defined in Waterman v. Mackenzie, supra.

Judgment will be entered affirming the decision of the Tax Court of the United States.