"Plaintiff brings suit under 28 U.S.C. §1498 alleging the United States’ infringement of certain patent rights that plaintiff asserts as licensee of Meridian Corporation. Defendant moves to dismiss or for summary judgment. In 1973, plaintiff purchased from Meridian the tools and equipment needed to produce and manufacture Meridian’s patented motor vehicle turn signals. These products are adaptable to both military and non-military uses, but the sales agreement described plaintiffs license only in terms of the products’ military part numbers. There is no dispute that plaintiffs rights extend only to applying the patents to military uses. For this purpose, Meridian assured *781 plaintiff that it would have an exclusive right and license to manufacture, use, sell, and sublicense the products under any of Meridian’s relevant patents.
"The year after Meridian sold its tools and equipment to plaintiff, it sold its entire Controls Division, which had developed and had been manufacturing the turn signals, to Swiss Controls and Eesearch, an Indiana corporation (Swiss) and others. There is some dispute whether that sales agreement conveyed, together with the division’s tangible assets, all of the patent rights Meridian then exercised through the division. Several lawsuits have since erupted, the parties advise us, among plaintiff, Meridian, and Swiss over conflicting claims to the patent rights. Plaintiff and Meridian settled their suit by an agreement during 1976, in which Meridian acknowledged that plaintiff holds an exclusive, worldwide license to manufacture the specified products, with the right to grant sublicenses under all of Meridian’s relevant patents. Meridian expressly granted to plaintiff the right to sue any third party infringer, but plaintiff agreed not to name Meridian as a nominal plaintiff in any suit it brought against Swiss or affiliated persons.
"The Government contends that we will exceed our jurisdiction under § 1498 if we entertain this suit brought by a patent licensee who is not the patent owner within the statutory definition at 35 U.S.C. § 261. That statute contemplates that a patentee may convey an ownership interest in his patent to another, even though that interest is restricted to a specific territory of the United States, so long as the patentee excludes himself as well from that territory. Only an assignee of the entire patent interest, or an undivided part of the patent, can sue infringers. This has been the law at least since the Supreme Court decided, in Gayler v. Wilder, 51 U.S. (10 How.) 477 (1850), that a licensee who shared with the patentee the right to make and sell the invention in New York State could not maintain an infringement suit in his own name. Neither statute nor court decision has recognized an ownership interest in such a nonexclusive license, or in licenses limited to a particular market or field of use. E. W. Bliss Co. v. United States, 253 U.S. 187 (1920), incorporated these *782 precepts of private patent litigation into the law of § 1498 suits against the United States. The Court held there that a license to use the invention solely for a particular purpose gave the licensee "no interest in the patent sufficient to sue * * * in his own name for infringement * * * without joining the owner of the patent. * * *” [Emphasis supplied.] Id. at 192.
"Neither party suggests that plaintiff holds any more than a field use license, limited to certain military applications of the patented products. Yet, while the Government correctly concludes that plaintiff is not a patent owner, it overstates the consequences of this determination in supposing that this suit must be dismissed. Our decision in Pratt & Whitney Co. v. United States, 139 Ct. Cl. 540, 153 F.Supp. 409 (1957), held that an exclusive licensee who was not an owner because its entitlement to use the invention was limited to a particular field of use, was nonetheless entitled to notice the owner into the infringement suit. The patentee, we pointed out, could use the patents for the specified purpose only with the licensee’s consent, and only the licensee could have licensed defendant. We did not make an owner of a nonowner, nor extend to nonowners the right to sue in their own names. We authorized issuance of a notice to the owner, requiring him to appear and present any claim he had. Had he failed to appear he would have been bound. We adhere to this procedure at least for purposes of the instant motion. We think it best serves the interests of justice, it furthers the policy disfavoring multiple litiga-tions, and it conforms to the Supreme Court’s attitude in Independent Wireless Co. v. Radio Corp., 269 U.S. 459 (1926). The Court there resorted to equitable principles to permit a nonowner plaintiff to join the owner and bind it to the outcome of the suit. Defendant wrongly limits this case to suits in equity. Our way to the same result has been facilitated by the development of our modern procedural rules, in particular our Rule 62 governing the joinder of necessary parties. The rule states:
(a) Necessary Joinder: Subject to and in the manner provided by Rule 41, persons having a joint interest adverse to the United States shall be made parties and *783 shall be joined on the same side as plaintiffs. When any person who should join as a plaintiff refuses to do so, he may be made an involuntary plaintiff.
Inasmuch as we hold that this suit comes within our jurisdiction once the patent owner is joined, the Government’s motion to dismiss should be suspended, and plaintiff granted leave to initiate proceedings under Rule 62 within 90 days of this order. Should plaintiff fail to file its motion within that time, unless enlarged, the Government’s motion shall be granted.
"Before plaintiff can effectively join, however, the patent owner must be identified. The record reveals the parties’ confusion as to that: their view of the facts differ, and the credibility of witnesses and affiants is not admitted. To determine whether the proper party is joined by plaintiffs motion (when and if made) requires a resolution of the disputed facts by our trial judge. The trial judge will be mindful that it may advance the eventual resolution of this dispute if the party who may be held to be the patent owner has the opportunity to intervene at the trial to state its objections, if any, to plaintiffs Rule 62 motion. As in Pratt & Whitney, though, a patent owner who declines to join without good cause, may be joined involuntarily and be bound by the outcome of this suit. Some of them may, however, set up commitments by Nartron not to join them as nominal plaintiffs. If such commitments are effective to prevent joinder of the person determined to be the owner, of course the suit cannot be maintained. We do not pass on this issue until we know it is more than academic or moot in the case.
"it is so ordered.”
On June 16, 1977 plaintiff filed its Rule 62 motion, and proceedings are continuing before the trial judge.