ALBERT F. HOLMES et al., Plaintiffs-Appellants, v. NO. 2 GALESBURG CROWN FINANCE CORPORATION, Defendant-Appellee.

Third District    Nos. 79-49, 79-48 cons.

Opinion filed October 22, 1979.—Rehearing denied November 27, 1979.

Barry M. Barash, of Barash & Stoerzbach, of Galesburg, for appellants.

Harry C. Bulkeley, of Lucas, Brown & McDonald, of Galesburg, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal involves two consolidated cases dealing with loans which the plaintiff-appellants allege violated the Federal Truth in Lending Act (TILA) (15 U.S.C. §1601 *et seq.* (1976)), the regulations promulgated thereto (Regulation Z) (12 C.F.R. pt. 226), The Illinois Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1973, ch. 26, par. 1—101 *et seq.*), the Illinois Consumer Installment Loan Act (Large Loan Act) (Ill. Rev. Stat. 1973, ch. 74, par. 51 *et seq.*), and the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*). In both cases the trial court granted summary judgment for the defendant.

In each complaint the plaintiffs (Crouch in one case, Holmes in the other) alleged that the defendant, No. 2 Galesburg Crown Finance Corporation (Crown) entered into a series of consumer finance transactions with plaintiffs. Each transaction was evidenced by loan disclosure statements, security agreements, and financing statements, all prepared by Crown. Plaintiffs allege that Crown, in violation of UCC section 9—204(2), attempted to obtain an unlawful security interest in plaintiffs' after-acquired consumer goods so as to mislead them into believing that Crown's security interest extended to consumer goods acquired more than 10 days after the loan as well as the household goods and furniture which the plaintiffs owned when they signed the loan papers and any goods which they acquired within 10 days after they made the loan. They further allege that the security interest violated the Large Loan Act and the Illinois Consumer Fraud Act in both cases.

We begin our analysis by noting that the Large Loan Act is very similar to TILA. The language, for the most part, is identical and the principal difference between them deals with the statute of limitations and various defenses which can be raised to TILA suits. Thus the Federal Truth in Lending cases, while not binding on this court, are highly persuasive.

In the Crouch case there are several transactions which the plaintiffs allege violate the Large Loan Act. The first two deal with security agreements made in 1973 and 1974 which contain identical language with respect to the security interests created therein. The language reads

> "It is hereby agreed by the above named Debtors that the above named Secured Party shall have a security interest in the personal property (also referred to as "collateral") described below together with all rights and remedies of a Secured Party under the Uniform Commercial Code of this State; and to the extent permitted by said Code, in all additions and accessories thereto and replacements thereof hereafter acquired by the Debtors and commingled with or substituted for the collateral hereinafter described."

Plaintiffs claim that the language "all additions and accessories thereto and replacements thereof hereafter acquired by the Debtors and commingled with or substituted for the collateral hereinafter described" makes the security interest claimed overbroad in that section 9—204(2) of the UCC excepts consumer goods other than accessions from any security interest if the debtor acquires rights in them later than 10 days from the time value is given.[1] Defendant responds that the language restricting its

---

[1] UCC 9—204(2) reads:
"No security interest attaches under an after-acquired property clause to consumer goods other than accessions ° ° ° when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value."

security interest to "the extent permitted by said Code" sufficiently restricts its rights and adequately discloses the interest so as to satisfy the Large Loan Act.

The Large Loan Act requires the creditor to disclose to the borrower a description or identification of the type of security interest that the creditor will retain and a clear identification of the property to which the security interest relates. If after-acquired property will be subject to the security interest or if other or future indebtedness is or may be secured by this property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held. The Act further states that "All of the disclosures shall be made clearly, conspicuously and in meaningful sequence * * *." Ill. Rev. Stat. 1977, ch. 74, par. 66.

■■■ The Large Loan Act was enacted to ensure a meaningful disclosure of credit terms to the consumer so that the consumer will be able to more easily compare the various credit terms available to him and avoid the uninformed use of credit. We believe that a mere reference to the UCC as a delineation of the parties' rights does not disclose any useful information to the consumer regarding the terms of credit he is obtaining so as to avoid the uninformed use of credit or more easily compare credit terms. Thus we hold that the 1973 and 1974 security agreements do not meet the standards of clear disclosure required by the Large Loan Act, and find a violation thereof.

The next transaction involving Crouch concerns a 1976 loan secured by the 1973 and 1974 security agreements as well as a 1976 security agreement. The 1976 loan contained a disclosure statement which read:

> "This loan and any extension or renewal thereof or future advance is secured by * * * Consumer goods including but not limited to household goods, furniture, appliances, and personal property of all kinds and descriptions: all accessions and additions now or hereafter installed in or affixed thereto; proceeds and replacements thereof; and consumer goods hereafter acquired within 10 days after Secured Party gives value."

Plaintiff Crouch claims that because the 1973 and 1974 security agreements were unlawful this loan was also a violation of the Large Loan Act, regardless of the fact that the disclosure statement contained a clause that might limit defendant's security interest to one permissible under the UCC. Defendant contends that the limitation in the disclosure statement in conjunction with the mention of the UCC in the security agreement sets forth all the required disclosures.

■■ We believe that the disclosure statement itself was a violation of the Large Loan Act. The disclosure statement purports to secure an interest in consumer goods of various types and replacements thereof and then adds

"and consumer goods hereafter acquired within ten days after Secured Party gives value." The natural reading of the disclosure statement would lead the ordinary consumer to believe that Crown has a security interest in Crouch's presently owned consumer goods, any replacements of them no matter when purchased, and any consumer goods in addition to those already owned (as opposed to replacements) bought within 10 days after the loan.

■■ This is a clearly impermissible security interest. It is well established that replacements are not synonymous with proceeds under the UCC. (See *Tinsman v. Moline Beneficial Finance Co.* (7th Cir. 1976), 531 F.2d 815.) Under the UCC, replacements of consumer goods which are not proceeds are also limited to a 10-day period. This limit is not discernible from the language of the disclosure statement. Therefore, the disclosure statement effectively misleads the consumer and violates the Large Loan Act.

Defendant cites *Basham v. Finance America Corp.* (7th Cir. 1978), 583 F.2d 918, as authority that the 10-day limitation language is enough to constitute adequate disclosure. However, *Basham* is inapplicable to prove that point. The language in *Basham* was exclusory. It listed the collateral and then stated that consumer goods bought later than 10 days after the loan were excluded. In the instant case, the language is inclusive. The disclosure statement lists collateral and then says that consumer goods bought within 10 days of the loan are included. Nowhere is there language to exclude replacements bought later than 10 days. Thus, *Basham* does not apply here.

■■ Even if the disclosure statement were not violative of the Large Loan Act we would find the 1976 loan to be a violation of the Act. We believe that where the underlying 1973 and 1974 security agreements are violative of the Large Loan Act, a disclosure statement which complies with the Large Loan Act is not enough to rectify the violation. As stated before, the purpose of the Large Loan Act is to ensure meaningful disclosures. Where the underlying security agreement is obfuscatory, a disclosure statement referring back to this agreement is bound to be equally confusing.

Defendant's reliance on *Basham v. Finance America Corp.* is misplaced. *Basham* dealt only with a security agreement excepting after-acquired consumer goods acquired later than 10 days after the loan. There was no additional, underlying, security agreement which was unlawful. Therefore *Basham* is inapposite. For the reasons above we hold that the 1976 loan from Crown to Crouch was in violation of the Large Loan Act.

■■ The final transaction which Crouch complained of deals with a 1977 loan which Crouch alleges violated TILA and Regulation Z as well as the Large Loan Act. In this loan the only security given was a security agreement and a motorcycle. The after-acquired property clause is not in

force in this loan. There are no allegations that the security agreement was unlawful, and there is nothing concerning the motorcycle as collateral which violates any of these Acts. Therefore, we do not find the 1977 loan to be unlawful.

The transactions which Holmes complained of are very similar to Crouch. There were two loans, dated 1975 and 1976, secured by a 1973 security agreement identical to the agreement we found violative of the Large Loan Act in Crouch's 1973, 1974 and 1976 loans. The disclosure statement in the 1975 loan did not contain the 10-day limitation language but when Holmes renewed the note in 1976 the new loan contained the 10-day limitation language which was identical to the disclosure statement in Crouch's 1976 loan. Defendants contend that any violation in the 1975 loan was cured by the language in the 1976 loan. We do not reach that issue. Since the 1976 loan to Holmes contains the same language as the 1976 loan to Crouch, we hold it to be violative of the Large Loan Act for the above-mentioned reasons. The 1975 loan to Holmes, secured by the 1973 security agreement, is equally violative.

■■ Plaintiffs contend that a violation of the Large Loan Act also constitutes a violation of section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1977, ch. 121½, par. 262) as a matter of law, and cite several cases as authority for this proposition. We find these cases unpersuasive. None of the cases cited finds a violation of the Consumer Fraud Act as a result of an impermissible security interest. While it may be possible for facts to exist wherein an impermissible security interest would be a violation of the Consumer Fraud Act, we believe that there is no such violation here as a matter of law.

For the reasons given above, we affirm in part and reverse and remand in part for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed and remanded in part.

ALLOY and SCOTT, JJ., concur.