FRANCIS G. KRAFT *et al.*, Plaintiffs-Appellees, *v.* NO. 2 GALESBURG CROWN FINANCE CORPORATION, Defendant-Appellant.

Third District   No. 80-449

Opinion filed May 7, 1981.

Harry C. Bulkeley, of Lucas, Brown & McDonald, of Galesburg, for appellant.

Barry M. Barash and Charles E. Covey, both of Barash & Stoerzbach, of Galesburg, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

No. 2 Galesburg Crown Finance Corporation (hereinafter Crown Finance) appeals from entry of summary judgment in favor of plaintiffs Francis G. Kraft and Mary Ann Kraft, in this action based upon alleged violations of the Illinois Consumer Installment Loan Act (Ill. Rev. Stat. 1977, ch. 74, par. 51 *et seq.*). Crown Finance argues that its statement in a 1977 consumer loan disclosure statement to the effect that the finance charges and total of payments were estimated was not a violation of the CILA. Additionally, Crown Finance argues that any violation of the CILA was cured by the execution of another loan in 1979, which loan contained identical provisions as the 1977 loan except that the finance charge and total of payments were not described as estimated.

The facts are not in dispute. On April 27, 1977, Francis and Mary Kraft borrowed $10,000 from Crown Finance. The loan was a consumer loan, made for the Krafts' personal and household uses. At the execution, Crown Finance delivered to the Krafts a document entitled "combined note and disclosures required by Federal and State law." The disclosure requirements are mandated by the Federal Truth in Lending Act (TILA) (15 U.S.C. §1601 *et seq.* (1976)), the regulations promulgated thereto (Regulation Z) (12 C.F.R. §226), and the Illinois Consumer Loan Installment Act (CILA) (Ill. Rev. Stat. 1977, ch. 74, par. 51 *et seq.*). On the disclosure statement provided the Krafts, under the words "Finance Charge" and "Total of Payments" was the word "estimated."

The only other pertinent factual matter is the execution of another loan note on January 18, 1979. The 1979 note contained the same terms and amounts as the original 1977 loan note and it was secured by the same real estate mortgage. The difference between the two notes was that on the 1979 note and disclosure statement the word "estimated" was omitted and did not appear under the words "Finance Charge" and "Total of Payments."

The Krafts thereafter filed suit based upon alleged violations of the CILA, premised upon the use of the word "estimated" in connection with the statement of finance charge and total of payments. Their complaint alleged that Crown Finance, in stating that the pertinent figures were estimated, failed to comply with sections 16(f), 16(h), and 16(m) of the CILA (Ill. Rev. Stat. 1977, ch. 74, pars. 66(f), 66(h), 66(m)). The defense position in the trial court was that the use of the word "estimated" in describing the finance charge and total of payments was justified because the loan was a simple interest loan on which interest charges were not prepaid, but were charged only on the principal amount remaining outstanding from time to time. Thus, the exact amount of interest could vary depending upon the date on which payment was made and, therefore, the exact amount of the finance charge and total of payments could not be

conclusively determined. As a result, according to Crown Finance, the figures were marked as estimated.

The trial court, relying largely upon a Federal Court of Appeals decision on similar facts under the Truth in Lending Act, entered summary judgment on behalf of the Krafts, finding violations of the CILA in the use of the term "estimated" in connection with the required disclosures. It entered summary judgment for the Krafts based upon twice the finance charge of the loan, which figure is set forth as the appropriate recovery under the CILA. (Ill. Rev. Stat. 1977, ch. 74, par. 70.) From that decision and judgment, Crown Finance now appeals.

■■ Section 16(f) of the CILA requires a lender to disclose "the total amount of the loan charge with a description of each amount included using the term 'finance charge'." (Ill. Rev. Stat. 1977, ch. 74, par. 66(f).) Section 16(h) requires the lender to disclose the "number, amount and due dates or periods of payment scheduled to repay the loan and the sum of such payments using the term 'total of payment'." (Ill. Rev. Stat. 1977, ch. 74, par. 66(h).) Section 16(m) of the CILA requires that all disclosures be made "clearly, conspicuously and in meaningful sequence." These disclosure requirements of the CILA, and the terminology in which they are expressed, are identical to those imposed by the Federal Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1976)) and Regulation Z (12 C.F.R. §226). Both the Federal and State statutory schemes are remedial in nature and designed to "ensure a meaningful disclosure of credit terms to the consumer so that the consumer will be able to more easily compare the various credit terms available to him and avoid the uninformed use of credit." (*Holmes v. No. 2 Galesburg Crown Finance Corp.* (1979), 77 Ill. App. 3d 785, 788, 396 N.E.2d 583.) As remedial legislation the acts must be construed liberally in order to accomplish their legislative purposes. (*N.C. Freed Co. v. Board of Governors* (2d Cir. 1973), 473 F.2d 1210, 1214, *cert. denied* (1973), 414 U.S. 827, 38 L. Ed. 2d 61, 94 S. Ct. 48. *Cf. Zehender & Factor, Inc. v. Murphy* (1944), 386 Ill. 258, 263, 53 N.E.2d 944.) Various decisions under the TILA have concluded that such liberal construction requires courts to strictly enforce the technical disclosure requirements of the act and the regulations with respect to uniformity of expression. *Smith v. No. 2 Galesburg Crown Finance Corp.* (7th Cir. 1980), 615 F.2d 407; *Gennuso v. Commercial Bank & Trust Co.* (3d Cir. 1977), 566 F.2d 437.

We have previously noted that due to the essential identity between the Federal TILA and the Illinois CILA, cases decided under the TILA, while not binding on this court, are highly persuasive. (*Holmes v. No. 2 Galesburg Crown Finance Corp.* (1979), 77 Ill. App. 3d 785, 787.) Both parties herein concede that, as well as the appropriateness of construing the Illinois CILA with reference to Federal regulations under the TILA.

The Seventh Circuit had recently decided a case with the same facts

and the same issue as is now before us on this appeal, except that the case arose under the corresponding provisions of the TILA. (*Smith v. No. 2 Galesburg Crown Finance Corp.* (7th Cir. 1980), 615 F.2d 407.) That case, as in the instant one, involved Crown Finance's insertion of the word "estimated" under the required disclosures for "Finance Charge" and "Total of Payments." The court therein rejected Crown's argument that use of the term "estimated" was permissible in light of the fact that the loan was a simple interest loan where charges were dependent upon the timing of payments. Because we find the decision and analysis in that case persuasive in our construction of the CILA provisions in this case, we quote at length from the decision in the *Smith* case.

"A. *Failure to use required terminology*

The general statutory requirement of disclosure is contained in 15 U.S.C. §1631, which provides:

Disclosure requirements—Clear and conspicuous disclosure to person extended consumer credit

(a) Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part or part D of this subchapter.

Pursuant to its authority, the Federal Reserve Board has promulgated Regulation Z, 12 C.F.R. §226.6(a) which provides in relevant part:

Disclosure's general rule. The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections.

It has been widely observed that one of the goals of the statute and Regulation Z is to bring about the standardization of terminology used in connection with credit transactions. * * * The rationale behind standardized terminology is that it facilitates consumer identification of the items listed, thereby encouraging comparison of the various credit terms which may be available. * * * The private civil damage action, which we have indicated serves primarily to redress the wrong to the individual, also serves the function of creating a system of 'private attorneys general' to participate in enforcing the broader social goal of standardization of terminology used. * * *

In view of the goal of standardized terminology to facilitate comparison shopping, many courts have held that the failure to use the required terminology results in a violation of the TILA. * * * It is

not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. * * * Many violations of the TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that creditors should escape liability for merely technical violations. * * * Thus, while it may be true, in some sense, as the creditors have argued, that the terminological violations here are inconsequential, the fact remains that they are violations. Any misgivings which creditors may have about the technical nature of the requirements should be addressed to Congress or to the Federal Reserve Board, not to the courts. * * *

Determining whether it was proper for the creditor to use the additional word '(Estimated)' in conjunction with the disclosure of the 'finance charge' and the 'total of payments' is more complex in light of the creditor's argument that estimated figures are permitted under Regulation Z, 12 C.F.R. §226.6(f) if the figure is marked as estimated, if insufficient information is available although reasonable efforts have been made to ascertain the information, and if this is not done for the purpose of evasion.

The parties are in agreement as to the reason the estimated figures were used here. The loan in question was a simple interest loan, so that the precise amount of interest charged under the loan depends on the timing of the payments made. The interest charges will vary slightly depending on whether payments are made on the due dates or early or late. Thus, for example, the precise amount due as the last installment cannot be determined until the payment is actually made. This uncertainty is common to all simple interest loans. Given the requirements of disclosure under TILA, the only reasonable alternative available to the creditor is to disclose the various figures based on the assumption that all payments will be made on the due dates. The question then presented is whether these assumed figures should simply be disclosed, using the required terminology to describe them, or whether they should be disclosed as estimated figures, as was done here, in an attempt to reflect the uncertainty inherent in simple interest loans.

We conclude that the method of disclosure used here was improper, and that the figures should simply have been disclosed as 'finance charge' and 'total of payments' based on the assumption that the payments would be made when due. In the first place, we

note that the Federal Reserve Board has taken this position. * * * The construction given the statute and regulation by the Board is certainly entitled to some deference. * * * More fundamentally, we believe that the creditor here argues for an overly broad use of estimated figures under the statute and regulation. It is apparent from the restrictive requirements imposed on the use of estimated figures under Regulation Z * * * that estimated figures are to be used only when absolutely necessary. This is entirely consistent with the standardization and comparison shopping goals of the Act discussed above. If, in the process of comparing terms, a consumer finds some simple interest loan disclosures given only in estimated figures, confusion is bound to result. Yet, under the interpretation offered by the creditor, all simple interest loans could be disclosed in this manner. This would undermine the purposes of the statute. Since the figures, when based on the assumption of payments being made when due, are readily available from charts and tables, the provisions of 12 C.F.R. §226.6(f) are not applicable, and we find it improper to disclose these figures as 'estimated.' " *Smith v. No. 2 Galesburg Crown Finance Corp.* (7th Cir. 1980), 615 F.2d 407, 415-18.

■■ We find that the concerns and analysis set forth by the Seventh Circuit are equally applicable to the instant case, and the disclosure requirements under the Illinois CILA. We conclude that strict adherence to the required terminology of the CILA's disclosure provisions serves the purposes of the statute. Any deviation from the required terminology, such as the use of the word "estimated" in the instant case, could serve to undermine the purposes of the statutory scheme. For reasons outlined by the Seventh Circuit above, we find that use of the word "estimated" in connection with disclosure of the finance charge and total of payments was not warranted and that such use of the term constituted a violation of the CILA. We find no error in the circuit court's determination that the 1977 loan violated the Illinois CILA.

Crown Finance next argues that regardless of any violation that may have occurred with respect to the 1977 loan, such violation was cured by the 1979 loan which was identical to the 1977 loan, except for the omission of the word "estimated" under finance charge and total of payments. Crown's argument is that the 1977 loan was merged into the 1979 loan and that such merger cured any defects in the prior loan agreement. We do not agree.

■■■ The doctrine of merger provides that where a subsequent contract is executed which relates to the same subject matter and embraces the same terms as a previous contract, then actions by the parties, based upon the contract, must be based upon the provisions of the subsequently

executed contract. The first contract is said to have been merged into the subsequent contract covering the same matters. We would have no difficulty in concluding that the 1977 loan agreement between the parties was merged into the 1979 loan agreement, for purposes of suits based upon the contract and its terms. Here, however, the Krafts' suit is not based upon either contract. The suit is based upon a statutory provision establishing civil liability for violations of the CILA. (Ill. Rev. Stat. 1977, ch. 74, par. 70.) Thus, the plaintiffs are not asserting rights arising under their contract with Crown Finance. Rather, their rights are based upon the statute, and the contract is only proof of the violation. Their statutory rights are independent of the contractual provisions and, therefore, any merger of the 1977 loan into the 1979 loan would not affect those rights. We reject the argument that the 1979 loan agreement cured the legal deficiencies of the 1977 loan agreement. (*Cf. Blue v. No. 2 Danville Crown Finance Corp.* (1976), 39 Ill. App. 3d 326, 349 N.E.2d 445.) In the *Blue* case, the issue was the effect of the execution of a renewal loan upon the statute of limitations set forth in the CILA. The plaintiff there was suing based upon a violation in connection with the original loan. The court permitted suit upon the original loan agreement and applied its terms when setting forth the applicable statute of limitations. In construing the act to permit suit upon the original loan, the court stated that its construction "prevents loan companies from escaping liability for violation of the Act by inducing the obligor to execute a renewal note free of the legal deficiencies in the original loan." (39 Ill. App. 3d 326, 329.) Implicit in the court's reasoning is a rejection of any merger theory whereby defects in an original loan agreement are cured by execution of a subsequent renewal loan.

The decision of the Circuit Court of Knox County, granting summary judgment for the plaintiffs, is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.