**BRUNSWICK
CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 534–88C.

United States Claims Court.

Jan. 9, 1991.

Douglas B. Henderson, Washington, D.C., attorney of record for plaintiff.

Steven M. Amundson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

### REGINALD W. GIBSON, Judge.

#### Introduction

Plaintiff, Brunswick Corporation (Brunswick), brings this action pursuant to 28 U.S.C. § 1498 (1988 ed.),[1] asserting two claims of patent infringement. Defendant has moved for judgment on the pleadings with respect to one of the claims, arguing that Brunswick lacks standing. Specifically, defendant argues that, as a matter of law, an exclusive licensee has an insufficient interest in a patent under 28 U.S.C. § 1498 to permit it to maintain a suit for infringement in its own name, where the license simply limits—the use to which the patented invention can be put, and the purchaser to which products incorporating the invention can be sold. Defendant also argues that even if, generally, such a licensee

has standing to sue for infringement, Brunswick, nevertheless, falls short for other reasons. We conclude, for the reasons set forth below, that defendant's motion for judgment on the pleadings should be denied.[2]

#### Facts

The basic facts delineated below are not in dispute.

In 1972, U.S. Patent No. 3,678,675 (the '675 patent) was issued to William Klein on an invention for antistatic fabric. Klein assigned the '675 patent to plaintiff Brunswick, making Brunswick the owner of the '675 patent.[3] In 1973, United States Patent No. 3,733,606 (the '606 patent) was issued to Sven–Goran Johansson on an invention for a means of camouflaging to avoid detection by radar reconnaissance. Johansson assigned the '606 patent to Barracudaverken AB, a Swedish corporation. Later, Barracudaverken AB and Diab AB merged to form Diab–Barracudaverken AB (hereinafter Barracuda), a Swedish corporation, with Barracuda assuming ownership of the '606 patent.

■ Brunswick desired to apply the technology of the '606 patent to its own camouflage products, with the ultimate goal of obtaining contracts to sell to the United States Government camouflage products impervious to radar reconnaissance. On August 24, 1974, Brunswick and Barracuda agreed that the parties would exchange technology; that Barracuda would grant Brunswick a license[4] to practice the inven-

---

**1.** All subsequent references to the United States Code are to the 1988 edition.

**2.** The parties have submitted matters outside the pleadings which have not been excluded by the court. Ordinarily under such circumstances, the court would convert the motion to one for summary judgment. See RUSCC 12(c). However, we note that defendant's motion is jurisdictional in nature. See Simon v. Eastern Kentucky Welfare Rts. Org., 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (challenge to party's standing is, in substance, a challenge to court's jurisdiction). Accordingly, the court will treat defendant's motion as a motion to dismiss for lack of subject matter jurisdiction.

**3.** Subject to the provisions of Title 35, U.S.C., patents have the attributes of personal property;

thus, a patent or any interest therein is assignable by an instrument in writing. 35 U.S.C. § 261. An assignment under § 261, when recorded at the United States Patent and Trademark Office, transfers all rights in and to a patent.

**4.** A license, in contrast to an assignment, only gives the licensee the right to use the patented invention free of liability for infringement. Spindelfabrik Suessen–Schurr Stahlecker & Grimm GmBH v. Schubert & Salzer Maschinenfabrik AG, 829 F.2d 1075, 1081 (Fed.Cir.1987), cert. denied, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988). There is no provision in Title 35, U.S.C., allowing recordation of licenses.

tion described in the '606 patent; and that Brunswick would pay royalties on the '606 patent to Barracuda. Pertinent portions of the 1974 agreement (the Agreement) and the 1974 license (the License) are set forth below.

Paragraph 4.2 of the Agreement provides in part:

Barracuda shall execute and deliver to [Brunswick] licenses under two U.S.A. patents, namely, 3,069,796 Ruter [and] 3,733,606 Johansson, giving to [Brunswick] the *exclusive right* to manufacture in the U.S.A. camouflage products according to said patents for sale to the U.S.A. Government for defense purposes.... [T]he license under [the '606 patent] shall continue for the same eight-year period as this Agreement, and the consideration for the license[] shall be the royalties specified hereinafter.... During the term of the licenses ... Barracuda shall retain its right to bring suit for infringement, with mutual consultation and decision, and to recover damages therefor, and [Brunswick] shall have the option of joining in any such suit....

(emphasis added).

Paragraph 5.1 of the License provides: In accordance with section 4.2 of said August 24, 1974 Agreement, Barracuda hereby grants to Brunswick an *exclusive license* to manufacture in the U.S.A. camouflage products according to Johansson 3,733,606 for sale to the U.S.A. Government for defense purposes.

(emphasis added).

Paragraph 5.2 of the License provides:

**5.** The notice reads, in full, as follows:

Pursuant to 41 U.S.C. § 114(b), 58 Stat. 649, you are hereby notified to appear within forty (40) days after service of this Notice upon you and to assert any claim or interest you may have in the subject matter of the above-entitled suit, by filing a complaint or answer herein in accordance with Rule 14 of this court. If you fail to appear and assert a claim or interest in the subject matter of this suit, your claim or interest therein will forever be barred. For your information, this Notice is accompanied by copies of the following pleadings that have been filed herein: complaint; plaintiff's motion to notify third party; order

The total consideration for the license afforded by paragraph 5.1 shall be the royalties provided for in Article IV of said August 24, 1974 Agreement. *Completion of payment of said royalties* over the eight year term of said August 24, 1974 Agreement *shall convert the license afforded by paragraph 5.1 into a paid-up license.*

(emphasis added).

Brunswick alleged in its initial complaint that the United States, through its contractors, infringed the '606 patent. Because Barracuda failed to *voluntarily join* in subject action, the court granted Brunswick's motion for issuance of a notice to Barracuda pursuant to RUSCC 14. Said notice specifically informed Barracuda that if it declined to appear to assert its interest in this action, any claim Barracuda might have relating to the subject matter of the suit would forever be barred.[5] Notwithstanding said notice, Barracuda declined to appear at any time. Thereafter, the defendant answered the complaint on January 30, 1989.[6]

On May 11, 1989, the court allowed Brunswick's motion for leave to file an amended complaint. Therein, Brunswick again alleged that the United States had infringed the '606 patent, and added a claim for infringement of the '675 patent. On that same day, defendant filed a motion for judgment on the pleadings with respect to the claim of infringement of the '606 patent, arguing at the threshold that Brunswick lacks standing to maintain this specific action.

granting plaintiff's motion to notify third party.

**6.** At defendant's request, the court also issued notices under RUSCC 14 to Devils Lake Sioux Manufacturing Co. (Devils Lake) and Teledyne, Inc. Devils Lake filed an answer as a third-party defendant. On November 9, 1989, the court allowed Devils Lake's unopposed motion to dismiss the complaint as to Devils Lake with prejudice. Devils Lake stipulated that it would not attempt to relitigate the issues determined in the present suit in any claim against Devils Lake as a warrantor or indemnitor under its contract with the United States.

*Positions of the Parties*

*Defendant*

In connection with the foregoing, and on further reflection, defendant advances three fundamental arguments. First, it argues that as a matter of law, an exclusive license to manufacture and sell a patented invention, limited to a specific field of use and a specific purchaser to which products incorporating the patented invention can be sold, does not, *ipso facto*, grant to the *licensee* a sufficient interest in the patent to allow it to maintain a suit solely in its name for infringement. Secondly, defendant argues that even if such a licensee has standing to sue in its name for infringement, Brunswick does not now hold, nor did it hold when the complaint was filed in 1988, any such license under the '606 patent. According to defendant, at best, Brunswick and Barracuda merely intended that the former receive an exclusive license under the '606 patent *only* for an eight-year limited term, which term expired on July 1, 1983. Thus, the provision in the License ostensibly granting Brunswick a paid-up exclusive license upon the completion of royalty payments should, therefore, be disregarded, defendant argues, since said provision fails to reflect the intention of the parties. Thirdly, defendant argues that the RUSCC 14 notice is insufficient to bind Barracuda to the judgment in this case, and therefore, the government could be forced to defend a second infringement suit, brought by Barracuda, for infringement of the '606 patent.

*Plaintiff*

Conversely, Brunswick argues in response that as a matter of law, a patent licensee under an exclusive license limited by the use to which the invention can be put and the entity to which resulting products can be sold does have standing to sue for patent infringement, where, as here, the patent owner has actual notice of the suit and refuses, without just cause or any cause, to join therein and protect its interest. Brunswick further argues that the extant circumstances require that the executed Agreement and the License be construed together under Illinois law, and, when so read, the two documents unequivocally manifest the parties' intention to grant Brunswick a paid-up, exclusive license under the '606 patent. Finally, Brunswick contends that Barracuda will be bound by a judgment in this case if it is joined as an involuntary plaintiff.

*Scope of the Court's Opinion*

In ruling on defendant's motion, the court must initially determine—whether the holder of an *exclusive license* to incorporate a patented invention into products manufactured in and sold to the United States for defense purposes has standing to sue the United States for patent infringement, where the patent owner has received actual notice of the suit but declines to join without just or any cause. If the answer to this initial inquiry is in the affirmative, the court must then determine—whether Brunswick holds a valid exclusive license to incorporate the invention described in the '606 patent into products made in and sold to the United States for defense purposes. Finally, the court will discuss the impact of the recent Supreme Court decision in *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), which defendant relies upon for the proposition that Barracuda cannot be bound by a judgment in the present case.

*Discussion*

I. *Whether the holder of an exclusive license limited to incorporating a patented invention into products made in and sold to the United States for defense purposes has standing to sue for infringement in the name of the patentee (the involuntary plaintiff).*

28 U.S.C. § 1498(a) provides in part:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Claims Court

for the recovery of his reasonable and entire compensation for such use and manufacture.

Under 35 U.S.C. § 271, "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." The geographic terms of the license at issue here reach as far as the statutory definition of infringement under § 271, so nothing further needs to be said regarding the geographic aspect of the license. Thus, for purposes of the patent statute, there is *no* geographic limitation on Brunswick's license.

■ It is settled law in this court that a party holding an exclusive license (limited to *a specific field of use*) can maintain a suit, in the name of the patent owner, for unlawful use of the patent if the patent owner has notice of and declines without just cause to join in the suit. *Pratt & Whitney Co. v. United States*, 139 Ct.Cl. 540, 543, 153 F.Supp. 409 (1957). The predecessor Court of Claims in that connection stated in *Pratt & Whitney Co.* that:

> It seems clear ... that the owner of a patent who grants to another the exclusive right to make [and] use [the patented invention] which does not constitute a statutory assignment holds the title to the patent in trust for such a licensee, to the extent that *he must allow the use of his name as plaintiff in any action brought at the instance of the licensee ... to obtain damages for the injury to his exclusive right by an infringer.... [T]he implied obligation of the licensor to allow the use of his name is indispensable to the enjoyment by the licensee.*

*Id.,* quoting *Independent Wireless Teleg. Co. v. Radio Corp. of Amer.,* 269 U.S. 459, 469, 46 S.Ct. 166, 169, 70 L.Ed. 357 *reh. denied,* 270 U.S. 84, 46 S.Ct. 224, 70 L.Ed. 481 (1926) (emphasis added).

In the face of such crystal clear obligatory precedent, defendant attempts, nevertheless, to distinguish *Pratt & Whitney,* but such efforts are unavailing. In that regard, defendant points out that unlike Brunswick, the licensee in *Pratt & Whit-*

*ney,* was expressly given the right to grant sublicenses and the right to sue for infringement. However, defendant fails to posture any reason *why* the fact that Brunswick does not have the right to grant sublicenses should lead to a different outcome in the present case, and the court can think of none. Additionally, with respect to its second averred distinguishing circumstance, we observe that the Supreme Court in *Independent Wireless* has stressed that the only way to give meaning to an exclusive license is to allow the licensee to bring suit *without* the licensor's permission when the licensor refuses to join in the suit. 269 U.S. at 469, 46 S.Ct. at 169. There the court stated that—"if there is no other way of securing justice to the exclusive licensee, *the latter may make the owner without the jurisdiction a co-plaintiff without his consent in the [suit] against the infringer.*" 269 U.S. at 472, 46 S.Ct. at 171 (emphasis added).

■ The language in paragraph 4.2 of the Agreement, under which Barracuda merely retains the right to sue for infringement, does not alter this conclusion. The critical point here, which defendant seems to ignore, therefore, is that Barracuda *merely retained its right to sue;* and paragraph 4.2 of the Agreement does *not* preclude Brunswick from bringing suit.

To counter the foregoing authority, defendant urges the court to follow an earlier Supreme Court decision, *E.W. Bliss Co. v. United States,* 253 U.S. 187, 40 S.Ct. 455, 64 L.Ed. 852 (1920), for the proposition that a "mere licensee" has no standing to sue for patent infringement. Defendant goes on to enshrine its characterization of the *Bliss* holding as a fundamental principle of patent law, whereas *Bliss* does no more than illustrate a fundamental principle of civil procedure, namely, a party cannot sue to enforce a right it does not possess. As is shown below, *Bliss* is inapposite.

Bliss owned a patent for a superheater, a device for increasing the range of torpedoes. Later Bliss contracted with the Armstrong Company (Armstrong) for the right to use inventions owned and patented by Armstrong, which inventions constituted

improvements on the Bliss superheater. Armstrong granted to Bliss the "sole and exclusive" right to use the Armstrong inventions "for the purpose of propelling Bliss–Leavitt torpedoes ... wherever sold by the Bliss Company and Whitehead [ & Company] torpedoes sold only to the United States government." 253 U.S. at 191, 40 S.Ct. at 456–57. Armstrong later licensed Whitehead & Company (Whitehead) to use the Armstrong inventions, subject to Bliss' rights under the Armstrong–Bliss agreement.

Bliss sued the United States for patent infringement, alleging that the United States had bought torpedoes containing the Armstrong improvements from Whitehead without paying royalties to Bliss. In addition, Bliss alleged that the United States had manufactured its own superheaters containing the Armstrong inventions without authority from Bliss.

The Court ruled that Bliss had no standing to maintain its infringement action against the United States. The Court stated that in order to have standing to sue for patent infringement, the plaintiff must have "an assignment, grant, or conveyance, either of the whole patent, of an undivided part of it, or of an exclusive right under it 'within and throughout a specified part of the United States.'" 253 U.S. at 192, 40 S.Ct. at 457. Bliss lacked standing because its license "[did] not purport to grant an interest in the patent or *any exclusive territorial rights.*" *Id.* (emphasis added). The use of the words "sole and exclusive" in the license are misleading. As the Court of Claims, whose opinion was affirmed by the Supreme Court, explained:

> There is nothing in the agreement [between Bliss and Armstrong] which restricts the manufacture in the United States of the superheaters by the Armstrong Company or its assignees.... Any party having the lawful right to make torpedoes can be authorized by the Armstrong Company to make, use, and vend superheaters in the United States, and to dispose of the same in connection with other torpedoes than Bliss–Leavitt or Whitehead to any person or Government.

*E.W. Bliss Co. v. United States,* 53 Ct.Cl. 47, 60–61 (1917). Thus, it is significant to note that *Bliss* is clearly distinguishable from the case at bar inasmuch as Bliss was only a "mere licensee," *as opposed to an exclusive licensee.*

Defendant expends a substantial amount of time attempting to hospitably characterize and distinguish precedent, but it asserts only one reason for denying standing to an *exclusive licensee* such as Brunswick, *i.e.,* the possibility of subjecting the United States to multiple infringement lawsuits stemming from the same patent. In this connection, defendant conjectures that Barracuda may have granted other exclusive licenses to unknown entities.

Defendant's conjectural argument must be rejected. There is not one scintilla of evidence to indicate that Barracuda granted exclusive licenses for the '606 patent to any other parties. This finding is conclusively corroborated by the fact that the parties herein executed a *joint stipulation* dated January 16, 1990, disavowing any knowledge of any other executed licenses regarding the '606 patent.

■ Against this background, we find that defendant's opposition is based primarily on spurious distinctions, a mechanical application of precedent, and rank conjecture. Moreover, we conclude that the only way to make Brunswick's apparent rights under the '606 patent meaningful is to allow it to sue for infringement, in Barracuda's name, since Barracuda, without just cause, refuses after actual notice to do so. *Independent Wireless,* 269 U.S. at 469, 46 S.Ct. at 169. Accordingly, the court finds that the holder of an exclusive license to incorporate an invention covered by a patent into products made in and sold to the United States for a specific use may sue the United States in the name of the licensor for patent infringement within that field of use, where the patent owner refuses without just cause after actual notice to join in the suit to protect its interest and is outside the jurisdiction of the court. *Independent Wireless,* 269 U.S. at 472, 46 S.Ct. at 170; *Pratt & Whitney,* 139 Ct.Cl. at 543.

This position has been made emphatically clear by the predecessor Court of Claims in *Nartron Corporation v. United States*, 214 Ct.Cl. 780, 782–783 (1977), where the court stated that:

> We adhere to this procedure ... for purposes of the instant motion. We think it best serves the interest of justice ... and it conforms to the Supreme Court's attitude in *Independent Wireless v. Radio Corp.*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

In the following part, the court addresses the question—whether Brunswick has such a valid exclusive license.

*II. Whether Brunswick holds a valid exclusive license to incorporate the invention described in the '606 patent into products made in and sold to the United States for defense purposes.*

Under their terms, and both parties so concede, the 1974 Agreement and the 1974 License between Barracuda and Brunswick are governed by Illinois law. Thus, this court finds itself in the posture of considering legal arguments based on state law which are generally raised in a contract action. *See Excelsior Wooden Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910 (1902) (federal court in patent infringement suit may decide state-law contract issues as necessary incident to its jurisdiction over infringement suit).

Defendant's central argument here, given the postured issue, is that in the 1974 Agreement, the parties had a meeting of the minds that the license *to be granted* would expire at the end of eight years, *i.e.*, July 1, 1983.[7] The 1974 License Agreement, on the other hand, unquestionably grants Brunswick a *paid-up exclusive license* upon the completion of royalty payments over the eight-year period. Given these circumstances, defendant strenuously contends that the grant of a paid-up license, as here, constitutes a separate modification to the Agreement which modification is *unsupported* by consideration. From the foregoing, defendant argues that

due to the want of consideration, the license is therefore unenforceable. Defendant also argues that this alleged inconsistency between the Agreement and the License renders the License ambiguous, and for that reason, the License should be construed against the drafter, Brunswick. Finally, defendant suggests that the person who signed the Agreement and the License on behalf of Barracuda, a Swede, may not have understood English and, therefore, may not have known what the instruments provided.

 We reject all of the defendant's arguments. First, we find that the 1974 Agreement (8/24/74) and the 1974 License (10/18/74) should be construed together as part of one transaction. This issue was sharply addressed in *Tepfer v. Deerfield Savings & Loan Assoc.*, 118 Ill.App.3d 77, 73 Ill.Dec. 579, 582, 454 N.E.2d 676, 679 (1983), where the court stated:

> The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract.... This is true whether or not the instruments were executed simultaneously; if executed at different times as parts of the same transaction they will be construed together....
>
> "Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect * * *" (17 Am. Jur.2d *Contracts* § 264.) ...

Contrary to defendant's specious argument, paragraph 4.2 of the Agreement *does not state* that Brunswick's license *expires* at the end of the eight-year period (July 1, 1983); rather, it simply states that Brunswick's license would "continue for the same eight-year period as this Agreement." The fact that the Agreement is silent as to whether Brunswick's prospective rights in

7. The eight-year period did not begin to run

until July 1, 1975.

the '606 patent would or would not survive the expiration of the Agreement, we hold, is not a fatal flaw. This is so because we read the Agreement to *expressly contemplate* a subsequent license agreement, which was duly executed. We see this situation to be analogous to that where a subsequent contract is executed covering the same subject matter as an earlier contract between the same parties; the terms of the earlier contract are merged into those of the latter contract, and the terms of the latter contract govern. *See Kraft v. No. 2 Galesburg Crown Finance Co.*, 95 Ill.App.3d 1044, 51 Ill.Dec. 451, 456, 420 N.E.2d 865, 870 (1981).

Paragraph 4.2 of the Agreement provides, *inter alia*, that—"[c]oncurrently with acceptance by [Brunswick] of the equipment called for by the Purchase Order, Barracuda shall execute and deliver to [Brunswick] licenses under two USA patents, namely ... 3,733,606 Johansson." Additionally, paragraphs 5.1 and 5.2 of the License provide that:

[5.1] In accordance with section 4.2 of said August 24, 1974 Agreement, Barracuda hereby grants to Brunswick an exclusive license to manufacture in the U.S.A. camouflage products according to Johansson 3,733,606 for sale to the U.S.A. Government for defense purposes.

[5.2] The total consideration for the license afforded by paragraph 5.1 shall be the royalties provided for in Article IV of said August 24, 1974 Agreement. Completion of payment of said royalties over the eight year term of said August 24, 1974 Agreement shall convert the license afforded by paragraph 5.1 into a paid-up license.

When read together, as counsel for defendant concedes they must be, the Agreement and the License clearly manifest the parties' total intent that Brunswick receive a paid-up exclusive license after paying royalties for the continuous eight-year period. For this reason, defendant's afterthought argument that the grant of a paid-up exclusive license was a modification to the Agreement unsupported by consideration is totally void of merit and requires short-shrift. As noted, and we so find, the 1974 License did not modify the 1974 Agreement, but rather it simply implemented said Agreement. The consideration supporting the grant of the paid-up exclusive license was the payment of royalties for eight years and the executed purchase order.

Moreover, the trade secrets and the confidential know-how portions of the Agreement and the License appropriately buttress and circumstantially corroborate the conclusion that the parties intended Brunswick to have a paid-up exclusive license in the '606 patent *after* said eight-year period. This we find because under paragraph 4.1 of the Agreement (implemented by paragraph 3.1 of the License), Barracuda was to also receive, upon payment of royalties for eight years, the exclusive royalty-free irrevocable right "in the U.S.A. to employ the Barracuda trade secrets and confidential know-how in the production of color-coated materials for military purposes for sales to the U.S.A. government." Said trade secrets and confidential know-how were obviously a necessary imperative to permit Brunswick to make effective use of the '606 patent. Yet according to defendant, the parties meant for Brunswick's license under the '606 patent to expire at the end of the eight-year period, while the rights to the trade secrets and know-how did not expire. If this were the case, then no one in the United States could have put the invention in the '606 patent to use for military purposes *after* the eight-year period had elapsed. Brunswick, in such circumstance, would be the *only* party authorized to employ the trade secrets and confidential know-how necessary to put the invention in the '606 patent to military uses in the United States, yet it would have no right to use the invention in the '606 patent itself. No reasonable construction of subject contracts can cause this court to believe that the parties intended such an absurd result. Given the overall scheme of the parties with respect to said contracts their manifest intent is, to this court, clear.

Because we find no ambiguity between the 1974 Agreement and the 1974 License regarding to the intent of the parties in

connection with the paid-up license, the court has no occasion to consider the application of the rule of *contra proferentem.* *See Farwell Constr. Co. v. Ticktin,* 84 Ill.App.3d 791, 39 Ill.Dec. 916, 922, 405 N.E.2d 1051, 1057 (1980) (*contra proferentem* is a "last resort" rule of contract construction employed only where the court cannot ascertain the meaning of contract provisions under any other interpretive approach). Contrary to its naked assertion, we also note that defendant has failed to show that plaintiff was the sole drafter of the 1974 Agreement and 1974 License contracts. Not one scintilla of evidence, by affidavit or otherwise, was proffered by defendant on this issue. In fact, plaintiff avers that, undoubtedly, counsel for *both* Brunswick and Barracuda were participants in such drafting.

■ Finally, it appears from the record, and contrary to defendant's bland assertion, that the person who signed the instruments for Barracuda understood English. Brunswick has submitted three pieces of correspondence, written in English and signed by Erik Gustafsson. Mr. Gustafsson also signed the 1974 Agreement and the 1974 License on behalf of Barracuda. In any event, the court will not presume, as defendant asks it to, that the person who signed the instruments in issue for Barracuda did not speak or understand English. Any presumption made should be to the *contrary,* namely, that seemingly sophisticated business people who contract with a United States corporation through instruments written in English *understand English.* Defendant will not be heard to cast the burden upon Brunswick of proving that Barracuda's principal understood English, where defendant failed to offer a morsel of creditable evidence that Barracuda's principal did not know what he was signing. In this regard, we find defendant's argument to constitute a specious afterthought.

The court will not reach defendant's additional arguments on the scope and meaning of the License. These arguments are based on extrinsic evidence that came into being *nine years after* the License was executed, namely, a 1983 contract between Barracuda and Brunswick. What the parties said in a 1983 contract sheds no creditable light on what they intended in 1974, and in any event, it would be improper to consider such *after-the-fact extrinsic evidence* to interpret an agreement which is *unambiguous.* *See National Aircraft Leasing, Ltd. v. American Airlines,* 74 Ill.App.3d 1014, 31 Ill.Dec. 268, 273, 394 N.E.2d 470, 475 (1979) (a contract is to be construed as a whole to effectuate the intent of the parties, and no evidence outside the contract itself may be considered if the contract is clear and unambiguous).

■ Alternatively, even if the court were to conclude that the 1974 License and 1974 Agreement are ambiguous, the extrinsic evidence offered by defendant *supports* the conclusion that in 1983, Brunswick had a paid-up exclusive license under the '606 patent. Under the 1983 agreement between Barracuda and Brunswick, Brunswick was granted a license to use technology developed by Barracuda *subsequent* to 1974, *i.e.,* the 1983 agreement expressly referred to this as "New Camouflage." By contrast, the 1983 agreement defined "Present Technology" as including the '606 patent. A portion of the royalty on the "New Camouflage" *was to be computed* as a percentage of Brunswick's sales of camouflage systems under "Present Technology," but nowhere does the 1983 agreement obligate Brunswick to pay a royalty *on* "Present Technology" or the '606 patent in particular. Furthermore, the 1983 agreement *does not grant* Brunswick a license regarding the "Present Technology," while the royalty provisions relating to "New Camouflage" expressly contemplate that Brunswick would market camouflage systems using "Present Technology." This is apparently so because Brunswick *then held* a paid-up license to use the "Present Technology" in the United States.

Moreover, the amendment to the 1983 agreement simply gives Brunswick licenses to sell camouflage systems utilizing "Present Technology" in countries other than the United States. Again, the amendment does not grant Brunswick a license to use "Present Technology" in the United

States, nor does it obligate Brunswick to pay a royalty on the use of "Present Technology" in the United States. The inescapable conclusion, again, is that the parties did not grant Brunswick a license under the '606 patent in the amendment to the 1983 agreement because they understood that Brunswick already held a paid-up exclusive license.

The court concludes, therefore, that Brunswick holds a paid-up exclusive license to incorporate the invention, described in the '606 patent, into products made in and sold to the United States for defense purposes.[8]

### III. Joinder of Barracuda.

■ At oral argument, defendant for the first time contended that the notice to Barracuda was ineffective, and would not bind Barracuda to any judgment in the present case. Defendant cited the Supreme Court's recent reiteration of the principle that "one is not bound by a judgment *in personam* in a litigation in which he is not designated a party or to which he has not been made a party by service of process." *Martin v. Wilks*, 490 U.S. 755, 761, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 *reh. denied*, 492 U.S. 932, 110 S.Ct. 11, 106 L.Ed.2d 626 (1989) (citation omitted).[9] In *Martin*, the Court stated that a judgment "among parties to a lawsuit resolves issues as among them but it does not conclude the rights of strangers to those proceedings."

109 S.Ct. at 2184 (footnote omitted). Even when third parties are "aware that the underlying suit might affect them and [choose] to pass up an opportunity to intervene," those third parties are not foreclosed from later litigating the same issues in a new action. 109 S.Ct. at 2185.

Defendant suggests that in light of *Martin*, it could be forced to defend a second infringement suit on the '606 patent. According to defendant, depending on the outcome of the present suit, nothing would preclude Barracuda from relitigating the issues of—whether Brunswick is an exclusive licensee; whether the '606 patent is valid; and whether it has been infringed. Defendant even raises the specter of having to pay damages for infringement twice, *i.e.*, once to Brunswick, and again to Barracuda.

Finally, defendant contends that after *Martin*, a Rule 14 notice and an invitation to appear, standing alone, are insufficient to bind a third party to a judgment.[10] However, we believe that defendant misses the point, inasmuch as it ingratiates *Martin* with an overly hospitable construction. The *Martin* Court did not cast aside decades of settled case law on standing to sue for patent infringement. Here, we read *Martin* to hold that Barracuda will be bound because it "is designated as a party" following due notice with respect to which it refused to appear not only without just cause, but without any cause.[11]

---

**8.** In a document filed with the court on January 16, 1990, defendant stipulated that plaintiff paid royalties to Barracuda under the '606 patent.

**9.** The court disapproves of defendant's eleventh-hour citation to *Martin*. The *Martin* opinion was issued some three months before defendant filed its reply brief, yet defendant failed to cite *Martin* in its reply. The court must consider defendant's argument, however, because it goes to the jurisdiction of the court.

**10.** In *RSH Constructors, Inc. v. United States*, 20 Cl.Ct. 1 (1989), third parties who had received notice under RUSCC 14 appeared specially to challenge the efficacy of the notices. As an alternative ground for quashing the notices, Judge Futey stated that after *Martin*, Rule 14 notice procedures were insufficient to bind a party to a judgment.

**11.** RUSCC 19(a) provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. *If he should join as a plaintiff but refuses to do so, he may be made an involuntary plaintiff.*

In *Martin,* the Court held that third parties had no duty to intervene in the suit as soon as they became "aware" of it, even if the third parties had an interest in the subject matter of the proceeding. 109 S.Ct. at 2185. The court stressed that "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be *joined." Id.* (emphasis added).

The Court went on to cite Fed.R.Civ.Pro. 19(a) as the proper approach for joining absent parties with an interest in a lawsuit, and quoted the rule in full in footnote 4 of its opinion. *Id.* Fed.R.Civ.Pro. 19(a) provides in part that "[i]f the person [sought to be joined] should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff." The Notes of the Advisory Committee on Rules [12] state that "[f]or example of a proper case for involuntary plaintiff, *see Independent Wireless Teleg. Co. v. Radio Corp. of America,* 269 U.S. 459 [46 S.Ct. 166]." In *Independent Wireless,* it will be recalled, the Supreme Court ruled that where a patent owner *outside the jurisdiction of the court* has notice of an infringement suit brought by its exclusive licensee, but refuses to join, the patent owner should be made an involuntary plaintiff. Specifically, the Court stated that:

> Here the [patent] owner is not in the jurisdiction and does not come in. It is the defendant, the alleged infringer, which objects to using the name of the owner as plaintiff without its consent.
>
> We think the cases cited go beyond the defendant's interpretation of them and do hold that *if there is no other way of securing justice to the exclusive licensee, the latter may make the owner without the jurisdiction a co-plaintiff without his consent in the bill against the infringer....*

269 U.S. at 472, 46 S.Ct. at 171 (emphasis added).

(emphasis added). RUSCC 19(a) is based on Fed.R.Civ.Pro. 19(a), which is substantially similar.

**12.** Reprinted following Fed.R.Civ.Pro. 19, 28 U.S.C. (1988 ed.), Appendix—Federal Rules of Civil Procedure.

By joining the patent owner, the "defendant charged with infringement will secure a decree saving him from [a] multiplicity of suits for infringement." 269 U.S. at 474, 46 S.Ct. at 171 (quoted approvingly in *Pratt & Whitney,* 139 Ct.Cl. at 543).

This result is expressly set forth by statute in 41 U.S.C. § 114(b):

> The United States Claims Court, on motion of either of the parties, or on its own motion, may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interests, if any, in such suits or proceedings.... The United States Claims Court may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, notify such persons to appear to assert and defend such interests. *Upon failure so to appear, any and all claims* or interests in claims of any such person against the United States, in respect of the subject matter of such suit or proceeding, *shall forever be barred....*

(emphasis added). *See also Maryland Casualty Co. v. United States,* 135 Ct.Cl. 428, 431–436, 141 F.Supp. 900 (1956).

■ Against this background, the court rejects defendant's contention that the Supreme Court in *Martin* meant to overrule *Independent Wireless sub silentio.* Clearly, the Supreme Court would not have nullified a provision of the Federal Rules of Civil Procedure *without saying it was doing so.* While the precise contours of *Martin* remain to be determined, it is clear beyond cavil that *Independent Wireless* remains vital, and that rules of procedure for joining an involuntary plaintiff were left undisturbed.[13]

**13.** Assuming arguendo that Barracuda cannot be made a party, the determination whether to proceed to the merits in Barracuda's absence or to dismiss for nonjoinder must be made in light of the factors set forth in RUSCC 19(b). RUSCC 19(b) provides:

> Determination by Court Whenever Joinder Not Feasible. If a person described in

[RUSCC 19(a)(1)–(2) ] cannot be made a party, the court *shall* determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measure, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(emphasis added).

In the present case, we find that *all* of the operative factors of RUSCC 19(b) militate toward a finding in favor of Brunswick and that Barracuda is *not* an indispensable party.

As to the first and second factors, the court finds that any prejudice to the United States occasioned by rendering judgment in Barracuda's absence can be avoided. To the extent that a judgment rendered in Barracuda's absence might visit a scintilla of prejudice on Barracuda, the court concludes that in fairness and good conscience, the action should, nevertheless, go forward.

Any potential prejudice to the government in proceeding in Barracuda's absence would take one of two forms: (i) having to relitigate issues decided in the present suit; and (ii) paying damages twice, *i.e.*, to Brunswick and then to Barracuda. However, contrary to defendant's intimations, the United States could not be forced to relitigate the validity and infringement issues in a later infringement suit brought by Barracuda. This is so because Barracuda would be collaterally estopped from relitigating such issues, since, with respect to validity and infringement of the '606 patent, Barracuda's interests are identical to those of, and fully represented by, Brunswick. *See Mother's Restaurant v. Mama's Pizza*, 723 F.2d 1566, 1569 (Fed.Cir. 1983) (collateral estoppel precludes relitigation of issues actually litigated and decided in a prior action, and necessary to the judgment in the prior action, where party seeking to relitigate issues had identical interests fully represented in prior action).

The possibility that the government could be forced to relitigate the issue of whether Brunswick is Barracuda's exclusive licensee under the '606 patent, and the possibility that the government would have to pay damages twice, we believe, can be avoided. Brunswick could immediately institute a proceeding in a forum with *in personam* jurisdiction over Barracuda for a declaration of Brunswick's rights under the '606 license. Should this court rule that the '606 patent is valid and has been infringed, entry of judgment for damages can be conditioned on Brunswick's stipulating that any damages be held in trust pending a determination,

binding on Barracuda, on the validity of Brunswick's exclusive license. *See Windsurfing Intern., Inc. v. Ostermann*, 100 F.R.D. 82 (S.D.N.Y. 1983) (defendant's motion to dismiss infringement suit for nonjoinder of third party appearing to have an ownership interest in patent at issue denied; any damages awarded would be held in trust pending a final determination on the ownership issue). In this way, the government will be protected from the possibility of double liability.

As to potential prejudice to the absent party, it appears at first blush that any of the following determinations, rendered in Barracuda's absence, would prejudice Barracuda: (i) Brunswick is a licensee of Barracuda; (ii) the '606 patent is *invalid;* or (iii) the '606 patent has not been infringed. However, as noted above, if Barracuda cannot be joined, it cannot be bound by this court's ruling on the validity of Brunswick's license, and therefore, Barracuda would not be prejudiced by a judgment rendered in its absence on the license issue. Barracuda would be foreclosed, however, from relitigating the validity and infringement issues in a later suit, as previously noted. Moreover, any prejudice to Barracuda on the issue of whether an exclusive license exists is substantially mitigated inasmuch as it has *actual notice* of the present suit and has declined to join. The court can only assume that Barracuda simply does not care whether the '606 patent is found invalid or not infringed. Of course, it is equally plausible that Barracuda is confident that Brunswick will vigorously and competently litigate the validity and infringement issues. In either case, there is nothing inequitable about proceeding in Barracuda's absence. *See* RUSCC 19(b) (court must determine whether "*in equity* and good conscience" the action should proceed in the absence of an interested third party) (emphasis supplied).

As to the third factor under RUSCC 19(b), neither party suggests that a judgment rendered in Barracuda's absence would not be adequate, because both parties fail to assert any right against Barracuda. Finally, with respect to the fourth factor under RUSCC 19(b), Brunswick would clearly not have an adequate remedy if the present suit were dismissed for nonjoinder. That finding is indisputable inasmuch as under 28 U.S.C. § 1498, the Claims Court is the exclusive forum for patent infringement suits against the United States. "[S]hould plaintiff be disabled from bringing this [infringement] action because the patent owner refuses to join voluntarily, the right it believed it obtained by the license may be largely illusory." *KLI, Inc. v. Richard Wolf Medical Instruments Corp.*, 483 F.Supp. 462, 464 (N.D.Ill.1980).

Accordingly, the court concludes that Barracuda is not an indispensable party within the contemplation of RUSCC 19(b), and therefore, even if Barracuda cannot be joined, the court should, in fairness and good conscience, proceed to the merits in Barracuda's absence.

### Conclusion

We hold, therefore, that the patent licensee, Brunswick, under an exclusive paid-up license for a specified use, has the right and standing to maintain an action in the name of the licensor for an unlawful use of the '606 patent, whereas here Barracuda has been joined as an involuntary plaintiff due to its refusal, without just cause, to voluntarily join in such suit. *See* Order dated January 9, 1991, incorporated herein by reference.

Wherefore, defendant's motion to dismiss for lack of subject matter jurisdiction is hereby DENIED.

The parties shall file with the court, on or before January 29, 1991, a joint statement advising how they now intend to proceed in this case, which shall include appropriate time frames relative thereto.

IT IS SO ORDERED.